**ARKWRIGHT CORPORATION v. UNITED STATES.**

Civil Action No. 1733.

District Court, D. Massachusetts.

Dec. 14, 1943.

James S. Y. Ivins, of Washington, D. C., Frank L. Kozol, Lee M. Friedman, and Friedman, Atherton, King & Turner, all of Boston, Mass., and Andrew B. Trudgian, of New York City, for plaintiff.

Frederic G. Rita, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe, Sp. Asst. to Atty. Gen., and Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., for the Government.

SWEENEY, District Judge.

This is an action to recover taxes which were collected by the Government from the plaintiff under the processing tax laid down in the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq.

When that tax was declared unconstitutional by the Supreme Court in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, a method for the proper recovery of the tax was set up by the Congress, 7 U.S.C.A. § 641 et seq. In the majority of cases the taxpayer was to present his claim before a Board of Review set up for that purpose. The District Courts of the United States were allowed to retain jurisdiction in that class of cases where the amount paid or collected as taxes was with respect to the processing of a commodity for a customer for a charge or fee, 7 U.S.C.A. § 655(b) Revenue Act of 1936, § 913(b). So that the first question presented in this case is whether this taxpayer, within the meaning of 7 U.S.C.A. § 655, supra, processed "for a customer for a charge or fee". If not, then this court has no jurisdiction of this

case. If the plaintiff did process "for a customer for a charge or fee", then the further question is whether the plaintiff has proved that it bore the burden of the tax, and has not been relieved thereof, nor reimbursed therefor, nor shifted such burden, directly or indirectly, within the meaning of 7 U.S.C.A. § 644.

All conditions precedent to the right to bring this action have been satisfied.

### Findings of Fact

The plaintiff Arkwright Corporation, sometimes referred to as Arkwright No. 2 (and herein referred to as Arkwright), is a wholly owned subsidiary of the United Merchants and Manufacturers, Inc. (herein referred to as United). Seneca Textile Corporation (herein referred to as Seneca) is a secondary corporation under United, although it was not wholly owned by United. Homer Loring and Lawrence Marks, as trustees for United, held 100,000 shares of Seneca during the period involved. There were outstanding another 100,000 shares in Seneca which stood in the name of Charles B. Straus and George S. Pollick, Jr., in equal amounts. The active management of Seneca was in Straus and Pollick. Marks and Loring were respectively president and vice-president of United. Straus and Pollick each owned their respective interests in Seneca individually. The division of stock between United on the one hand, and Straus and Pollicks on the other, was on a fifty-fifty basis. It is interesting to note the close factual tie-up of the three corporations—despite United's lack of a majority of the stock.

The accounting departments of Arkwright, United and Seneca were all centralized in one office. Both Seneca and Arkwright had a common comptroller. If money was needed by Arkwright for its ordinary expenses, or if its balance was too low for it to meet its obligations, the comptroller would transfer money from Seneca to Arkwright without specific request on the part of Arkwright, except that the office manager of the accounting office would direct that such transfer take place. The centralization of the three accounting departments, and such transfers of money, and the actual workings of the three corporations, lead to the belief that United actually dominated and ran the three corporations.

Arkwright manufactured marquisettes for Seneca. It took the raw cotton as it came to it, and manufactured it into suitable fabric for delivery to the converter. Seneca was a converter of textiles; that is, it took the gray goods as they came from Arkwright and finished or printed them as the case might be. Arkwright did no work other than for Seneca.

In 1932 Arkwright was in a bad financial position. It did not have sufficient money to operate. It effected a method of operation with Seneca and United which continued through the period here involved. That method of operation after August 1, 1933, was governed by written agreement. On that date Seneca entered into an agreement with United whereby United agreed to cause its wholly owned subsidiary Arkwright to perform the terms of that agreement. The contract was entered into in behalf of Seneca by Charles B. Straus, its president, and on behalf of United by Homer Loring, its president. The agreement was confirmed and approved for Arkwright by Homer Loring, its president. It is the contention of the plaintiff that under this agreement Seneca was a customer whose commodity it processed for a charge or fee, within the meaning of Section 655(b).

The written agreement provided that both Seneca and Arkwright were to share in the respective profits and losses of the other. In Paragraph III it provided that Arkwright "will manufacture goods and will sell and deliver the same to Seneca". In actual practice the way the thing worked out was that Seneca purchased raw cotton which it sent to Arkwright to be processed. Although it billed the cotton to Arkwright, nevertheless Seneca retained title to it so as to protect it against other creditors of Arkwright. When Arkwright had finished processing the goods, it sold and delivered them back to Seneca, deducting from the total charge the cost of the raw cotton which had been billed to it by Seneca, but for which payment had not been made. Also, included in the billing was the cost of processing, its overhead and other expenses, including the processing tax. The tax was not labelled as such, but was included in the overhead charge. From time to time Arkwright borrowed from Seneca sums of money in order to take care of its payroll and current operating expenses, and even for the payment of the processing taxes which are sought to be recovered here. When Arkwright delivered goods to Seneca, it credited on its billing such advances as may have been made to it during the par-

ticular period. Nowhere in Arkwright's billing to Seneca does there appear to be any fee or charge as such for the processing of goods in units or in any amounts.

The fact that Seneca and Arkwright were to participate in each other's profits or loss seems to indicate a joint venture on their part in the processing of cotton into raw fabric and then into finished fabric.

In the ordinary sense of the word a customer is: "One who regularly, customarily, or repeatedly makes purchases of, or has business dealings with, a tradesman or business establishment; a buyer or purchaser; a patron." Webster's New International Dictionary, Second Edition, Unabridged. It presupposes a dealing at arm's length whereby the parties are free to accept or reject terms. Arkwright enjoyed no such freedom of action.

■■ Having in mind the will of Congress to allow recoveries only when the economic burden of the tax had been borne by the taxpayer, can we say that Seneca, in that sense, was a customer of Arkwright? Whatever tax was paid by Arkwright and not passed on to Seneca, if it resulted in gain to Arkwright, had to be partially shared with Seneca. I doubt very much that Congress in reserving certain jurisdiction in the District Courts meant to include such an arrangement as we find here. As between Arkwright and Seneca I find that they were joint venturers and that Arkwright did not process goods for a customer for a fee or charge within the meaning of Section 655. Hence this court has no jurisdiction over this action.

If, however, I am wrong in my interpretation of what is meant by processing for a customer for a fee or charge, there seems to be another barrier to the plaintiff's right of recovery.

■ Arkwright has brought this action in its own corporate name, and seeks to have the determination of its right to recover made purely from its corporate books. If we consider Arkwright as an unaffiliated corporation, and consider its method of doing business, it is clear that Arkwright did not bear the burden of the tax, for it billed it in its entirety to Seneca. Counsel argue that the fact that Seneca and Arkwright were to participate in each other's profits and losses would inevitably result in Arkwright's being forced to bear at least one-half of the economic burden of the tax.

The trouble with this argument is that it assumes too much. The relationship between the taxes passed on to Seneca and the profits or losses of either Seneca or Arkwright can neither be established by the facts in the case nor by reason. It is clear that the taxes paid by Arkwright were passed on to Seneca. The moment the tax was absorbed by Seneca it lost its identity as such. What profits or losses were made by either, or what happened in the final accounting between the two companies, has no direct relationship to the tax. I therefore conclude that, viewing Arkwright as a distinct corporation, and forgetting its affiliations with United and Seneca, it has failed to prove that it did not pass on the economic burden of the tax, and has likewise failed to prove that it bore any of the economic burden of the tax within the meaning of the statute.

■ In view of the fact that counsel have strenuously argued that the United States will be unjustly enriched by the retention of this tax, whereas all the equities are in favor of the taxpayer, it may be well to disregard the corporate fiction of the three companies. We, then, find this group composed of Seneca, United and Arkwright engaged in processing and fabricating raw cotton into a finished marquisette. Some one of the group has paid the processing tax which was later declared to be unconstitutional. They now seek to recover such payment. They have not shown that the tax which they paid, whether paid by Seneca or Arkwright, has not been passed on to the next transferee of this group. It is only in the event of such a showing that they have any right to recover, and, in the absence of it, they are barred. Counsel for the plaintiff has recognized that the fundamental purpose of Congress in limiting the right to recover was to avoid unjust enrichment by a taxpayer who had passed on the burden of the tax which he paid to someone else. But he argues that to bar recovery to this plaintiff would result in unjust enrichment to the Treasury. This may be true if viewed narrowly, but they are in no position to complain for they have not shown that the tax which they paid has not been passed on to the next handler of their goods in the usual course of business. If they could have proven this, their argument on the balance of the equities would have more appeal.

### Conclusions of Law

From the foregoing, I find and rule that the taxes paid by the plaintiff were not with respect to the processing of a commodity for a customer for a charge or fee.

I find and rule that the plaintiff did not bear the burden of the tax.

I find and rule that the plaintiff has not proven that it bore the burden of the tax, and has not been relieved thereof, nor been reimbursed therefor, nor shifted such burden, directly or indirectly.

The action is dismissed for lack of jurisdiction.