**AIKEN MILLS, Inc., v. UNITED STATES.**
**SEMINOLE MILLS v. SAME.**

**Nos. 5242, 5243.**

Circuit Court of Appeals, Fourth Circuit.

Aug. 2, 1944.

James S. Y. Ivins, of Washington, D. C. (P. F. Henderson, of Aiken, S. C., and P. W. Phillips and Richard B. Barker, both of Washington, D. C., on the brief), for appellants.

Frederic G. Rita, Sp. Asst. to Atty. Gen., (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Claud N. Sapp, U. S. Atty., of Columbia, S. C., on the brief), for appellee.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

These are two suits filed in January, 1942, in the District Court of the United States for the Eastern District of South Carolina, by the appellant Aiken Mills, Inc., here referred to as a plaintiff and appellant Seminole Mills, here referred to as a plaintiff, against the United States of America for the recovery of custom processing taxes collected from the plaintiffs under the Agricultural Adjustment Act, 7 U.S.C.A. § 601, et seq.

The facts in the two suits are identical and they were heard together. The causes came on for trial before the district court in October, 1943. At the hearing counsel for the Government moved to dismiss the complaint on the ground that the district court lacked jurisdiction. The court took this motion under consideration, briefs were filed and in January, 1944, the judge below filed an opinion in which he found the facts and stated his conclusions of law to the effect that the court lacked jurisdiction to hear the causes, and granted the motion made on behalf of the Government to dismiss the complaints. Judgment was entered in accordance with the conclusions reached in the opinion, from which action of the court below this appeal was brought.

There is no dispute as to the facts which as found by the court below are as follows: Each of the plaintiffs operated cotton mills, and was a subsidiary of United Merchants & Manufacturers, Inc. They entered into written agreements with the Seneca Textile Corporation, hereinafter called Seneca, of which company United Merchants & Manufacturers, Inc., owned 50% of the stock. Under these contracts it was agreed that the plaintiffs "will manufacture goods and will sell and deliver the same to Seneca"; that Seneca would sell the entire output of each, and that the profits and

losses resulting from the sale of the goods would be divided between Seneca and each of the plaintiffs. The contracts covered a joint account between Seneca's Department M and the plaintiffs under which Seneca shared in the profits and losses of the mills and the mills shared in the profits and losses of Department M of Seneca. They pooled their interests in the over-all profit.

In the performance of the contract, Seneca purchased raw cotton which it sent to the mills to be processed. It billed the cotton to the mills, but retained title to it so as to protect it from other creditors of the mills. When the mills had finished processing the goods, they sold and delivered them back to Seneca, deducting from the total charge the cost of the raw cotton which had been billed to them by Seneca, but for which payment had not been made; the billing also included the cost of processing, the overhead and other expenses, including the processing tax. The tax was not labelled as such, but was included in the overhead charge. From time to time the mills borrowed from Seneca sums of money in order to take care of their payroll and current operating expenses, and the payment of the processing taxes, which are sought to be recovered here. When the mills delivered goods to Seneca, they credited on their billing such advances as may have been made to them during a particular period.

As stated by the judge below, in his well considered opinion:

"Processing taxes were imposed pursuant to Section 9(a) of the Agricultural Adjustment Act upon the first domestic processing of certain basic agricultural commodities, including cotton. In United States v. Butler, 297 U.S. 1, [56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914], the taxing provisions of the Act were declared unconstitutional.

"Congress, in order to prevent the unjust enrichment of those who had paid taxes under the Agricultural Adjustment Act, but had actually shifted the burden of them to the consuming public, enacted Title VII of the Revenue Act of 1936 [7 U.S.C.A. § 623 note, 644 et seq.], which imposed as a condition to the refund of these taxes the requirement that the taxpayer establish that he had borne the burden of the tax.

"A special procedure was provided with respect to processing taxes. Jurisdiction of suits for their recovery was withdrawn from the courts, Sec. 905, Revenue Act of 1936, 7 U.S.C.A. Sec. 647, and a Board of Review was constituted with exclusive jurisdiction to review the Commissioner's rejection of claims for their refund, Sec. 906, Revenue Act of 1936, 7 U.S.C.A. Sec. 648. Processing taxes are defined in the Act, Sec. 913(b), Revenue Act of 1936, c. 690, 49 Stat. 1648, 7 U.S.C.A. Sec. 655(b), as follows: 'The term "processing tax" means any tax or exaction denominated a "processing tax" under the Agricultural Adjustment Act, but shall not include any amount paid or collected as tax with respect to the processing of a commodity for a customer for a charge or fee.'

"The effect of these provisions was to permit suits for the recovery of custom processing taxes, that is, taxes on processing done for a customer for a fee or charge, to remain within the jurisdiction of the United States District Courts under Section 905 of the Act, so that the question presented by the motion is, did the plaintiffs process the cotton in these cases for a customer for a charge or fee, within the meaning of 7 U.S.C.A. Sec. 655?"

The question involved is whether the work done by the mills in processing the cotton under the agreement with Seneca was "processing of a commodity for a customer for a charge or fee."

The judge below reached the conclusion in his opinion that, under the agreement between the mills and Seneca, Seneca was not a customer of the mills but that the mills and Seneca were joint venturers in a transaction. It is our opinion that the judge below reached the right conclusion. Seneca was clearly not a customer in the commonly accepted meaning of that word and, in the event that losses occurred from the joint operation under the contract, the mills would receive no charge or fee. In Dexter & Carpenter v. Houston, 4 Cir., 20 F.2d 647, 651, we discuss the question of joint adventures, where we said:

" 'A joint adventure has been aptly defined as a "special combination of two or more persons, where in some specific venture a profit is jointly sought without an actual partnership or corporate designation". * * * It is purely the creature of our American courts.' 33 C.J. 841. A joint adventure has also been termed 'commercial enterprise by several persons joint-

ly.' Joring v. Harriss, 2 Cir., 292 F. 974.

"A joint adventure partakes of the nature of a partnership for a certain specific purpose, but does not have all the qualities of a partnership. 'A "joint adventure" may exist where persons embark in an undertaking without entering on the prosecution of the business as partners strictly, but engage in a common enterprise for their mutual benefits; they each have the right to demand and expect from their associates good faith in all that relates to their common interests'." Jackson v. Hooper, 76 N.J.Eq. 185, 74 A. 130. See also, Reid v. Schaffer, 6 Cir., 249 F. 553.

See, also: Tompkins v. Commissioner, 4 Cir., 97 F.2d 396; Murray v. Williams, 4 Cir., 114 F.2d 282; Arkwright Corp. v. United States, D.C., 53 F.Supp. 359.

The contracts, in this case, between Seneca and the mills were in our opinion agreements to enter into a joint adventure. Under these agreements the parties engaged in a common enterprise for their mutual benefit. The enterprise was the production of cotton cloth, the profits and losses were to be shared equally by the mills and Seneca and under the contracts Seneca must necessarily be financially interested in any recovery of the processing taxes made by the mills. This is another fact that negatives the conclusion that Seneca was a customer.

In Arkwright Corporation v. United States, D.C., 53 F.Supp. 359, 361, the court, in considering a similar contract said:

"Nowhere in Arkwright's billing to Seneca does there appear to be any fee or charge as such for the processing of goods in units or in any amounts.

"The fact that Seneca and Arkwright were to participate in each other's profits or loss seems to indicate a joint venture on their part in the processing of cotton into raw fabric and then into finished fabric.

"In the ordinary sense of the word a customer is: 'One who regularly, customarily, or repeatedly makes purchases of, or has business dealings with, a tradesman or business establishment; a buyer or purchaser; a patron.' Webster's New International Dictionary, Second Edition, Unabridged. It presupposes a dealing at arm's length whereby the parties are free to accept or reject terms. Arkwright enjoyed no such freedom of action.

"Having in mind the will of Congress to allow recoveries only when the economic burden of the tax had been borne by the taxpayer, can we say that Seneca, in that sense, was a customer of Arkwright? Whatever tax was paid by Arkwright and not passed on to Seneca, if it resulted in gain to Arkwright, had to be partially shared with Seneca. I doubt very much that Congress in reserving certain jurisdiction in the District Courts meant to include such an arrangement as we find here. As between Arkwright and Seneca I find that they were joint venturers and that Arkwright did not process goods for a customer for a fee or charge within the meaning of section 655."

The contracts which Seneca had with the mills refer to "joint action" and "joint operation" and the whole structure of the contracts indicates a joint enterprise and not a transaction between a customer and a manufacturer.

It is contended on behalf of the appellants that the legislative history of the Act of Congress here involved shows that it was the intent of Congress to leave the jurisdiction in cases of this character in the federal courts, but it is clearly established that where the language of the statute is clear and needs no interpretation we may not look to the legislative history of an Act to aid in its interpretation. "We are not at liberty to construe language so plain as to need no construction, or to refer to committee reports where there can be no doubt of the meaning of the words used." Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 72, 80 L.Ed. 62.

We know of no authority contrary to the numerous holdings to the above effect.

The transaction entered into between plaintiffs and Seneca was a joint venture for their mutual benefit and the mills were not processing commodities for a customer for a charge or fee and Congress did not leave the jurisdiction over the matter here in question in the federal courts. The action of the court below in dismissing the suits for want of jurisdiction was correct and the judgment of the court below is accordingly affirmed.

Affirmed.