(No. 6985. July 6, 1942.)

STATE OF IDAHO on the relation of Calvin E. Wright, State Auditor, Respondent, v. WALTER L. BROWN, Employer, and IDAHO COMPENSATION COMPANY, Surety, Appellants.

[127 Pac. (2d) 791.]

Ralph S. Nelson and Spencer Nelson for appellants.

Bert H. Miller, Attorney General, and Frank L. Benson, Assistant Attorney General, for respondent.

GIVENS, C. J.—Deceased, Axel Tesdor Vidlund, was killed July 19, 1940, when a tree fell upon him. No claim for compensation was made within a year after his death, and the State of Idaho filed a claim for an award under subd. 6 of sec. 43-1101, I.C.A., as amended by chap. 147 of the 1935 Session Laws, on the theory there were no dependents, which sufficiently appears to be the situation. The

Industrial Accident Board granted the award, and the employer and surety have appealed.

About five days before his death, deceased and Niles Hansen went to Walter L. Brown, who is engaged in the logging and lumbering business, and secured a sawing job. Mr. Brown gave them axes, wedges, and sawing tools, took them out and put them to work, their remuneration being $1 per thousand board feet of timber cut by them. A strip of land was laid out for deceased and Hansen upon which they were to cut certain sized trees.

Deceased and Hansen had been working together all day July 19. Other men were working on another strip 350 to 400 feet away and across a little hill. After felling their last tree, deceased and Hansen had a discussion as to where they would resume their work. Hansen stopped to fill his oil bottle, and deceased walked ahead through a draw. A tree cut by the men on the other strip fell across the hill, broke in two, one of the pieces struck deceased, and he died in a few minutes. The point at which deceased was struck was 150 to 200 feet from where he and Hansen had cut their last tree and was not within the strip upon which they had been cutting. From the point where they felled the last tree to the point where deceased was hit was in the same general direction as the point to which Hansen had started to resume their operations.

Brown, in making payment of premiums under the compensation law, had included the amount paid to sawyers.

The board found deceased was killed as a result of a personal injury by accident arising out of and in the course of deceased's employment with defendant, and ordered appellants to pay $1,000 into the state treasury to be deposited in the Industrial Administration Fund.

Appellants contend the board erred in not specifically finding whether deceased was an employe or an independent contractor; that the board erred in finding he was killed in the course of his employment, if he was an employe, since he was found dead away from the strip of ground on which he was to work; that the board erred in permitting and refusing to strike certain testimony relative to the payment of premiums covering deceased, among others.

The only evidence introduced indicating whether deceased was an employe or independent contractor is the following testimony of Mr. Brown:

"Q. What were the circumstances of your [Brown's] engaging him to work for you?

"A. Him and Mr. Hansen come there and stated they wanted a sawing job and I gave them tools and took them out and put them to work and that was the last I saw him.

"Q. What tools did you give them?

"A. Axes, wedges and sawing tools.

"Q. They belonged to you?

"A. Yes.

"Q. You engaged both he and Mr. Hansen at the same time?

"A. Yes.

"Q. What arrangements were made for paying their wages?

"A. I hired them on the thousand basis on that particular strip. I can't remember what we paid, all the way from $1.00 to $1.50 per thousand, the log scale.

"Q. Do you hire all your men—do you pay them by the thousand?

"A. No, just the sawyers.

"Mr. Langley: Was Mr. Vidlund hired as a sawyer?

"A. Yes, in fact that's the only kind of work he ever followed.

* * * *

"Q. Were the wages for Mr. Vidlund included on your payroll for which you paid premium? * * * *

"A. Yes, they were."

And the testimony of Mr. Hansen:

"Q. How did you determine which tree to fall?

"A. We had a strip laid out. A strip for us to saw. A certain place.

"Q. And you were instructed to fell trees of a certain kind and certain diameter? * * *

"A. No, we don't have no certain diameter. Had to keep the tops down to a certain type.

"Q. The tops. You spoke about a strip of ground. The trees within a certain strip. Explain what you mean by that. * * *

"A. A strip is just a piece of ground so wide and so

long and we go on there and saw the timber. That is all there is to it. * * *

"Q. * * By whom were you paid for the services you rendered in falling this timber? * * *

"A. We was paid by Mr. Brown. * * *

"Q. And how were you paid? * * *

"A. Paid so much per thousand."

The evidence regarding appellants' contention that deceased was not killed in the course of his employment is as follows:

"Q. How far was it from the point—how far was it from where you had felled the last tree to the point Mr. Vidlund was lying at the time you found him? * * * Was it on the same tract of ground?

"A. It must have been 150 or 200 feet.

* * * *

"Q. And on the 19th of July, 1940, were you and Mr. Vidlund working within one of these strips? * * *

"A. Yes. * * *

"Q. From the point where you and Mr. Vidlund felled the last tree, how far would other sawyers be working in another strip at that time? * * *

"A. I would judge around 350 feet or 400 feet. Somewhere along there.

"Q. How far was it from the point where you and Mr. Vidlund felled the last tree to where he was stricken by the tree that fell on him? * * *

"A. Between 150 feet and 200 feet. Somewhere along there. I don't know for sure.

"Q. Now, was the point at which Mr. Vidlund was lying at the time you saw him dead, within the strip that you and he were cutting on?

"A. No, Sir.

"Q. How far was it from that strip?

"A. Just about 150 to 200 feet. * * *

"Q. Now, had you, had there been any discussion between you and Mr. Vidlund as to where you would go to resume your work after you felled the last tree? * * *

"A. Yes.

"Q. When you left the tree that you had last fell, after

filling your oil cans, did you or did you not, go to a point to resume work that you and he had discussed? * * *

"A. I hadn't got there yet.

"Q. Were you going in that general direction when you were told that your partner was under the tree? * * *

"A. Yes, I was. * * *

"Q. From the point where you and Mr. Vidlund felled the last tree, to the point where he was stricken by another tree, was that in the same general direction as the point to which you were going to resume your operations? * * *

"A. Yes."

While there are perhaps authorities to the contrary (*Helton v. Tall Timber Lbr. Co.*, 148 La. 180, 86 So. 729), the circumstances of the employment of deceased herein were such as to constitute him an employe and not an independent contractor; and the findings, though they should have been more explicit than they were, sufficiently show it to have been the purpose and intent of the board to so hold in making a finding that deceased suffered a compensable accident and by awarding the $1,000 to the state. The following authorities are in accord with such holding:

*Taylor v. Blackwell Lbr. Co.*, 37 Ida. 707, 218 Pac. 356, wherein the court held there was sufficient evidence to support the board's findings that Taylor was an employe. The testimony showed Taylor was working for Finrow; "that Taylor was under no contractual obligation to skid the entire quantity of logs, but only as many as he desired; that Finrow retained the right, under the contract, to exercise a degree of supervision over the work; that Taylor could have quit at any time he desired, and that Finrow could have discharged him at any time before the work was finished; that Finrow furnished all the appliances for moving and decking the logs, and one team and harness, as well as the feed for both teams; that Finrow directed the manner in which the work was to be performed; and that Taylor was to receive $2.50 per thousand feet and at least $10 per day."

See also *Hansen v. Rainbow Min. & Milling Co.*, 52 Ida. 543, 17 Pac. (2d) 335, and In re Black, 58 Ida. 803, 80 Pac. (2d) 24.

In *Kelley's Dependents v. Hoosac Lbr. Co.*, 95 Vt. 50, 113 Atl. 818, Kelley worked as a teamster. Kelley and a man named Beers accepted an offer of the defendant to pay $12 per thousand feet for cutting and delivering logs to the mills. Tools were furnished by the defendant. Defendant's foreman blazed out the roads, and when the men had cut the logs on one road they would report to the foreman, and he would blaze out another. They were subject to the foreman's directions as to where they should come and go and cut, but the defendant had no right to call Kelley away from this to some other work. The defendant specified the lengths the logs were to be cut, gave directions as to the size down to which trees were to be taken, as to where the tops were to be left, and to the unloading at the mills. They, and the others working by the thousand, were carried on the defendant's books with the per diem men, but the pay roll sheets on which their names appeared were headed "jobbers." Their contract ran for no particular time but could be terminated at any time, and it did not cover a specified tract or quantity. The court held that, there being conflict in the evidence as to whether Kelley was an employe or independent contractor, the decision of the commission that he was an employe must stand.

The evidence in *Robinson v. Younse Lbr. Co.*, 8 La. App. 160, was to the effect that Robinson was a log cutter employed by Lee to cut logs in the woods. The men worked in pairs. Robinson and Shows got $1 per thousand, which they divided equally between them. Lee laid off the land in strips and assigned a strip to each pair; they were shown where to cut, required to cut all the timber on their respective strips and to cut them clean. The men went to work when and worked as they pleased, so far as hours were concerned. They were given no specific instructions as to the length of the logs but were instructed to cut according to the general rules, which all log cutters understood. Lee testified he would have interfered if they had cut logs in improper lengths, that he would have ordered them back if they had left the strip to which assigned. The court held Robinson was a common laborer and not an independent contractor.

In *Kehrer v. Industrial Commission*, 365 Ill. 378, 6 N.E. (2d) 635, Fiedler went to the timber with Schneider and Hertzler and showed them where to work, instructing them what kind and size of trees to cut and not to work beyond

a certain boundary line. They were not instructed when to begin or quit work, but could be discharged at any time. The court held that Schneider was an employe.

In the case of *Weaver v. Shanklin Walnut Co.*, 131 Kan. 771, 293 Pac. 950, Weaver received so much per thousand feet he cut. He was told to cut trees of certain dimensions or sizes. Two men worked together. They did not have regular hours. Weaver was found to be an employe.

In *Dick v. Gravel Logging Co.*, 152 La. 993, 95 So. 99, deceased was found to have been a mere laborer employed by the defendant company as part of its logging outfit engaged in cutting down trees and sawing them into logs. The land was laid off in strips of certain sizes by the company, who assigned the men to the strips and was careful to see that they were cut clean, that the trees were cut the required distance above the ground, and that the logs were cut into the required lengths. The right was reserved by the defendant to discharge any workman who violated any of these requirements. The men were paid 50 or 45 cents per thousand feet.

In *Finley v. Keisling*, 151 Tenn. 464, 270 S.W. 629, Swafford was to cut and haul certain timber as directed by defendants. Defendants had the right to say when and where he should begin and cease cutting, and generally to direct and supervise the work. The court concluded that Swafford was the servant of the defendants and not an independent contractor.

This court has heretofore held that the showing of payment of premiums for insurance on the particular person involved is admissible as indicative of the status being that of employe and not independent contractor. (*Hansen v. Rainbow Min. etc. Co.*, supra.) Hence, appellant's challenge of this evidence is not well taken.

The contention that the accident did not arise in the course of and out of the employment because deceased was not immediately upon a strip assigned to him for cutting and actually engaged in felling trees is amply answered by the proposition that "an accident or injury is so received while it occurs while he [employe] is doing what a man in like employment may reasonably do within the time during which he is so employed, and at a place where he may reasonably be during that time. * * * He may do whatever a human being may reasonably do while in the performance

of his duty without such acts placing him outside of the course of his employment." (*Murdoch v. Humes & Swanstrom,* 51 Ida. 459, at 464, 6 Pac. (2d) 472; *Zeier v. Boise Transfer Co.,* 43 Ida. 549, 254 Pac. 209; *Wineland v. Taylor,* 59 Ida. 401, 83 Pac. (2d) 988.) Deceased was not so far from his place of employment as to be removed from the protection of the statute, and he was exposed to the extra and special hazard of being in the woods, which is comparable to the exposure to the public street as considered in *Zeier v. Boise Transfer Co.,* supra.

We may concede that a liberal construction demanded by the statute in favor of the dependents of an employe should not operate in behalf of the state claiming the $1,000 award involved herein, and still the award here was amply justified.

Order affirmed.

Budge, Morgan, Holden, and Ailshie, JJ., concur.