742 P.2d 417

**Ronald C. RHODES and Brenda Rhodes, husband and wife, Plaintiffs-Appellants,**

v.

**SUNSHINE MINING COMPANY, a Delaware corporation; Hecla Mining Company, a Washington corporation; Silver Dollar Mining Company, an Idaho corporation; and International United Steel Workers of America, John Does I, II and III, Defendants-Respondents.**

No. 16530.

Supreme Court of Idaho.

July 20, 1987.

Howard & Owens, Coeur d'Alene, for plaintiffs-appellants. Kenneth B. Howard, Jr. (argued).

Evans, Keane, Koontz, Boyd & Ripley, Boise, for defendants-respondents Sunshine Min. Co. and Hecla Min. Co. Rex Blackburn (argued).

Richard A. Cummings, Boise, for defendant-respondent Silver Dollar Min. Co.

Margaret L. McMahon, Caldwell, and George H. Cohen, Washington, D.C., for defendant-respondent Intern. United Steel Workers of America.

SHEPARD, Chief Justice.

Plaintiff-appellant Rhodes was working in an underground mine in Shoshone County when he was severely injured by falling rock. The injury left Rhodes permanently paralyzed below the waist, and there is no question that he is permanently and totally disabled. Rhodes asserted a claim against Sunshine Mining Company, and received worker's compensation benefits. There appears no question but that pursuant to I.C. §§ 72–407, –408, –409 and –432. Rhodes is entitled to the medical benefits and permanent total disability benefits for his lifetime.

Thereafter, plaintiffs Rhodes filed this action against Sunshine, Hecla, Silver Dollar, and International Steelworkers of America, contending that Sunshine, as the unit (mine) operator negligently failed to train and protect Rhodes; that Hecla and Silver Dollar, as non-operating unit members, negligently allowed Sunshine to supervise the work within the unit area; and that the unit breached a duty owed to Rhodes pursuant to a collective bargaining agreement. The three mining companies filed motions for summary judgment, and under I.C. § 72–102(10) the district court granted those motions, holding that Sunshine was the direct employer of Rhodes, and that Hecla and Silver Dollar were statutory employers, and hence action against the mining companies was barred by I.C. §§ 72–201(1) and –211. The district court, *sua sponte*, and without hearing, granted summary judgment in favor of United Steelworkers, relying upon *Carroll v. United States Steelworkers of America*, 107 Idaho 717, 692 P.2d 361 (1984) and *Rawson v. United Steelworkers of America*, S.Ct. # 15338 (Feb. 24, 1986), opinion withdrawn Sept. 4, 1986, 111 Idaho 630, 726 P.2d 742 (1986).

The principal issue on this appeal is whether the district court erred in granting summary judgment in favor of defendants

Silver Dollar and Hecla on the basis that those companies were statutory employers and hence immune from tort liability. On this appeal appellants Rhodes do not assert error in the district court's grant of summary judgment to Sunshine.

Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Summary judgment will be granted if no genuine issue as to any material fact is found to exist after the pleadings, depositions, and affidavits have been construed in a light most favorable to the party opposing summary judgment. *Bunker Hill Company v. United Steelworkers of America,* 107 Idaho 155, 686 P.2d 835 (1984); *Meridian Bowling Lanes, Inc. v. Meridian Athletic Association,* 105 Idaho 509, 670 P.2d 1294 (1983); *Farmer's Insurance Company v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976); *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.,* 97 Idaho 348, 544 P.2d 306 (1975); I.R.C.P. 56(c).

In the instant case the record does not disclose any genuine issue of material fact, but rather only questions of law relating to the status of Hecla and Silver Dollar as joint venturers and statutory employers who are shielded from tort liability.

I.C. § 72–201 provides in pertinent part: The state of Idaho ... exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for injured workmen and their families and dependents is hereby provided ... to the exclusion of every other remedy ... all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished. ...

I.C. § 72–209(1) provides:

**Exclusiveness of liability of employer.**—(1) Subject to the provisions of section 72–223, the liability of the employer under this law shall be exclusive and in place of all other liability of the employer to the employee, his spouse, dependents, heirs, legal representatives or assigns.

Thus, it is clear that the purpose of Idaho's Workmen's Compensation Act is to provide sure and certain benefits for workmen injured during employment, but making that relief under the compensation act the workmen's exclusive remedy, and statutorily shielding an employer against an action in tort from those same injuries. That statutory shield, however, does not extend to third parties whose liability is preserved by I.C. § 72–223(1), which provides in pertinent part:

**Third party liability.**—(1) The right to compensation under this law shall not be affected by the fact that the injury, occupational disease or death is caused by circumstances creating in some person other than the employer a legal liability to pay damages therefor, such person so liable being referred to as the third party. ...

I.C. § 72–102(10) provides:

"Employer" means any person who has expressly or impliedly hired or contracted the services of another. It includes contractors and subcontractors. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workmen there employed. If the employer is secured, it means his surety so far as applicable.

In *Adam v. Titan Equipment Supply Corp.,* 93 Idaho 644, 647, 470 P.2d 409, 412 (1970), this Court considered the statutory employer/employee relationship.

The relation thus established is purely statutory. The legislature for the purpose of the compensation act created the relation of employer and employee between independent groups who never before had borne, and who do not now under the common law bear that relation to each other. It forces liability upon parties who are in privity of contract.

This Court, in construing our workmen's compensation statutes, has at times focused on the right to control as being a

significant element in determining statutory employer status. *See In re Sines,* 82 Idaho 527, 356 P.2d 226 (1960); *Merrill v. Duffy Reed Constr. Co.,* 82 Idaho 410, 353 P.2d 657 (1960); *State ex rel. Wright v. Brown,* 64 Idaho 25, 127 P.2d 791 (1942); *Larson v. Independent School Dist. No. 11–J,* 53 Idaho 49, 22 P.2d 299 (1933). *See also Fitzen v. Cream Top Dairy,* 73 Idaho 210, 249 P.2d 806 (1952) (dealing with the authority to direct the details of work), and *Beutler v. MacGregor Triangle Co.,* 85 Idaho 415, 380 P.2d 1 (1963); *Russell v. City of Idaho Falls,* 78 Idaho 466, 305 P.2d 740 (1956); *State ex rel. Wright v. Brown, supra; Hanson v. Rainbow Mining and Milling Co.,* 52 Idaho 543, 17 P.2d 335 (1932); *Taylor v. Blackwell Lumber Co.,* 37 Idaho 707, 218 P. 356 (1923) (relating to the authority to hire and fire). *See also Lockard v. St. Maries Lumber Co.,* 76 Idaho 506, 285 P.2d 473 (1955) (relating to the existence of an employment contract). *See In re Sines, supra; Merrill v. Duffy Reed Constr. Co., supra* (relating to the payment of wages).

Other opinions of the Court have dealt with the consideration to be given such elements as ownership of the premises, proprietorship, virtual proprietorship, and management of the business. *See McGee v. Koontz,* 70 Idaho 507, 223 P.2d 686 (1950); *Moon v. Ervin,* 64 Idaho 464, 133 P.2d 933 (1943); *Jones v. Packer John Mines Corp.,* 60 Idaho 653, 95 P.2d 572 (1939).

◼ Another element to be considered is the source of the payment of workmen's compensation premiums. Commonly, the statutory employer pays the premiums covering his employees, since it is the employer's legal responsibility to insure that his employees are covered by workmen's compensation insurance. *See* I.C. §§ 72–201, –204, –210. *See generally Pinson v. Minidoka Highway Dist.,* 61 Idaho 731, 106 P.2d 1020 (1940).

At the time of Rhodes' injury, the mine was being operated under a unitization agreement between Sunshine, Hecla and Silver Dollar. Rhodes' work site was within the area covered by the agreement and was designated as the "unit area." The Unit Agreement, which was executed in September 1958, resolved claims between the three mining companies, consolidated several agreements, and clarified the status of various mining claims asserted by each party within the unit area. *See Silver Syndicate, Inc. v. Sunshine Mining Company,* 101 Idaho 226, 611 P.2d 1011 (1979). Under the agreement, Sunshine, Hecla and Silver Dollar conveyed to a trustee their asserted respective individual property interests in the ores and minerals within the unit area. The trustee then conveyed back to each party an agreed upon percentage interest in the ores and minerals in the entire unit area, and each company received a proportionate share of the profits, or were allocated a share of the losses, *i.e.,* Sunshine a 57.14 percent interest, Hecla a 33.25 percent interest, and Silver Dollar an 9.61 percent interest.

Under the agreement, Sunshine was designed as the unit operator, and Hecla and Silver Dollar were designated non-operator unit members. As the unit operator, Sunshine was "authorized and empowered on behalf of and for the account of all the parties hereto, to supervise, manage and conduct the orderly exploration and/or development, mining and operation of the unit area for the production of ores and minerals therefrom." Included therein was Sunshine's management of all labor, materials and services necessary for the work. Sunshine, acting as agent for Hecla and Silver Dollar, marketed the production from the unit area and paid each member its proportionate share. Prior to such allocation, Sunshine made a proportionate assessment to each member of all costs and expenses incurred in the operation of the unit area.

◼ Hecla and Silver Dollar assert that the unitization agreement demonstrates that they are joint venturers with Sunshine, and hence obtain the status of "statutory" employers of Rhodes. A joint venture is created when the following factors are met:

(1) a contribution by the parties of money, property, effort, knowledge, skill,

or other assets to a common undertaking;

(2) a joint property interest in the subject matter of the venture and a right of mutual control or management of the enterprise;

(3) expectation of profits, or the presence of a venture;

(4) a right to participate in the profits; and

(5) a limitation of the objective to a single undertaking or ad hoc enterprise. 46 Am.Jur.2d., *Joint Ventures*, § 7.

In *Stearns v. Williams*, 72 Idaho 276, 284–5, 240 P.2d 833, 838–9 (1952), this Court set the following guidelines in determining whether a joint venture does exist:

Whether a relation of joint adventures exists is primarily a question of fact for the trial court to determine from the facts and the inferences to be drawn therefrom. *Milton Kauffman, Inc. v. Superior Court*, 94 Cal.App.2d 8, 210 P.2d 88; *San Francisco Iron & Metal Co. v. American Milling & Industrial Co.*, 115 Cal.App. 238, 1 P.2d 1008.

It is immaterial in whose name the property is acquired in a joint venture, as one holding title is a trustee for those who are so engaged in the joint enterprise. *Ferguson v. Nagle*, 159 Okl. 219, 15 P.2d 1.

To constitute a joint adventure the parties may combine their property, money, efforts, skill or knowledge in some common undertaking, and their contribution in this respect need not be equal or of the same character, but there must be some contribution by each joint adventurer of something promotive of the enterprise. *Parker v. Trefry*, 58 Cal.App.2d 69, 136 P.2d 55; *Rae v. Cameron*, 112 Mont. 159, 114 P.2d 1060; *Nelson v. Abraham*, 29 Cal.2d 745, 177 P.2d 931; 48 C.J.S., Joint Adventures, § 1, page 802; § 2, page 814, note 95; § 8, page 836; and even though one adventurer owns all the property used in the joint adventure, this is not conclusive in determining whether such relationship exists. *United States Fidelity & Guaranty Co. v. Dawson Produce Co.*, 200 Okl. 540, 197 P.2d 978.

A contract of joint adventure need not be expressed but it may be implied, in whole or in part, from the conduct of the parties, *Lane v. National Ins. Agency*, 148 Or. 589, 37 P.2d 365; direct testimony or documents are not essential, *Hupfeld v. Wadley*, 89 Cal.App.2d 171, 200 P.2d 564; 48 C.J.S., Joint Adventures, § 3, page 816; *Yeager v. Graham*, 150 Kan. 411, 94 P.2d 317. Again, even though the details of such joint adventure were shown by indefinite and uncertain testimony, this does not preclude finding that such a joint adventure existed from their acts and conduct, and from the testimony and the inferences that might reasonably be drawn therefrom. *Replogle v. Ray*, 48 Cal.App.2d 291, 119 P.2d 980; *Milton Kauffman, Inc. v. Superior Court*, supra; *Nelson v. Abraham*, supra.

A joint adventure is generally a relationship analogous to but not identical with a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit. *McKee v. Capitol Dairies, Inc.*, 164 Or. 1, 99 P.2d 1013; *Nelson v. Abraham*, supra; *Bosworth v. Eason Oil Co.*, 202 Okl. 359, 213 P.2d 548; *Sime v. Malouf*, 95 Cal.App.2d 82, 212 P.2d 946, 213 P.2d 788; 48 C.J.S., Joint Adventures, § 1, pages 801–802.

In a joint enterprise there must be agreement to enter into an undertaking between parties having a unity of interest in the objects or purposes of the agreement, and a common purpose in its performance, *Brigham v. Munden*, 142 Or. 471, 19 P.2d 1096; while a provision for sharing losses is important in construing an agreement for a joint enterprise, it is not essential, and neither an agreement to share profits nor losses is conclusive in the construction of the contract, but the intention of the parties controls. *Las Vegas Machine & Engineering Works v. Roemisch*, Nev., 213 P.2d 319. As to third persons, the legal and not the actual intention controls.

*Snavely v. Walls*, 13 Cal.App.2d 600, 57 P.2d 161; *Aiken Mills v. United States*, D.S.C., 53 F.Supp. 524; *Id.*, 4 Cir., 144 F.2d 23.

The district court held that the elements of a joint venture had been satisfied, and we agree. The record clearly supports such holding. Sunshine, Hecla and Silver Dollar contributed to the venture their ownership interest to ores and minerals in exchange for a proportionate share of the profits or losses, and each was assessed a share of all costs and expenses incurred in the operation. The agreement sets forth the duties and rates of each party, and all parties had the right to control the venture. Only the day-to-day operational duties were delegated to Sunshine. As stated by the district court:

> It would be absurd, especially in the context of a mining operation, to *require* that all joint venturers *actively participate* in all decisions of operation. Rather, the purpose of a joint venture is to pool effort and resources; not to duplicate efforts by forbidding all joint venturers from delegating the *rudimentary* day-to-day operational decisions of the venture.

As stated by the Ninth Circuit Court of Appeals in *House v. Mine Safety Appliances Co.*, 573 F.2d 609, 620 (9th Cir.1978):

> We ... recognize that control need not be shared equally between members of a joint venture, but can be delegated to one member of the group. (Citation omitted.) Thus, the limited control retained by third party defendants here does not preclude classification of these arrangements as joint ventures.

The language of the agreement:

> [I]t is the desire of the parties hereto to adopt a plan of unitization and to unitize the described unit area, having for its purpose the unitized management, operation and further development of the several areas in the unit area, all to the end that a greater recovery of ore may be had and waste and duplication prevented.
> ...

clearly satisfies the factor of limitation of the objective to a single undertaking.

Thus, we conclude that Sunshine, Hecla and Silver Dollar had created a joint venture.

We next turn to the question of whether, as members of the joint venture, Hecla and Silver Dollar were the statutory employers of Rhodes. In *Tucker v. Union Oil of California*, 100 Idaho 590, 603 P.2d 156 (1979), this Court, in determining the question of "statutory employer," set forth factors to be considered:

(1) whether the party had the right to control or direct the activities of the employee;

(2) whether the party was the owner or lessee of the premises where the injury occurred;

(3) whether the party was the proprietor or operator of the business; and

(4) whether the party paid or contributed to the plaintiff's worker's compensation premiums. *See, Tucker*, 100 Idaho at 594, 603 P.2d at 160.

In *Connor v. El Paso Natural Gas Company*, 123 Ariz. 291, 599 P.2d 247 (Ct. App.1979), the Arizona Court of Appeals affirmed the trial court's granting of summary judgment in a case similar to the one at bar. Hecla and El Paso Natural Gas Co. operated a mine as joint venturers. Hecla was given responsibility for the operation of the mine. The plaintiff's husband was killed in a mine explosion. After receiving workmen's compensation benefits, the plaintiff brought a wrongful death action against Hecla, the mine operator, and El Paso Natural Gas, its joint venturer. In affirming the trial court's ruling, the court 599 P.2d at p. 249 stated:

> Where a joint venture exists, each of the parties is the agent of the others and each is likewise a principle of the others so that the act of one is the act of all. *West v. Soto*, 85 Ariz. 255, 336 P.2d 153 (1959). For purposes of workmen's compensation, each individual joint venturer is the employer of all employees doing work on behalf of the joint venture, *W.B. Johnston Grain Co. v. Self*, 344 P.2d 653 (Okl.1959); *Insurance Company of North America v. Dept. of Industry*, 45

168

Wis.2d 361, 173 N.W.2d 192 (1970); *Industrial Commission v. Lopez*, 150 Colo. 87, 371 P.2d 269 (1962), and each enjoys the protection of the exclusive remedy provisions, *Felder v. Old Falls Sanitation Co., Inc.*, 47 A.D.2d 977, 366 N.Y. S.2d 687 (1975); *Cook v. Peter Kiewit Sons Company*, 15 Utah 2d 20, 386 P.2d 616 (1963); *Guilbeau v. Liberty Mutual Insurance Co.*, 324 So.2d 571 (La.App. 1975); *Lewis v. Gardner Engineering Corp.*, 254 Ark. 17, 491 S.W.2d 778 (1973).

 The uncontroverted evidence before the trial court indicates that Hecla and Silver Dollar, along with Sunshine, owned the interests being mined within the area, and that Hecla and Silver Dollar were proprietors of the mining operation and contributed toward the provision of workmen's compensation benefits to Rhodes, and similarly situated employees. Thus, Hecla and Silver Dollar were the statutory employers of Rhodes and are immune from tort liability under I.C. §§ 72–209 and –211. The summary judgment granted in favor of Hecla and Silver Dollar is affirmed.

The appellants Rhodes assert that nevertheless they should be permitted recovery under the doctrine of dual capacity set forth in 2A Larson, *The Law of Workmen's Compensation*, § 72.80:

An employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies in addition to his capacity as employer a second capacity that confers on him obligations independent of those imposed on him as employer.

The appellants argue that this Court in *Hancock v. Halliday*, 65 Idaho 645, 150 P.2d 137 (1943), has adopted and applied the dual capacity doctrine. We disagree. In *Hancock*, an employee of Bunker Hill was injured while at work. He was subsequently negligently treated by a doctor, and brought a common law action against the doctor. As the decision makes clear, the doctors who treated the injured workman were not employees of Bunker Hill, but were independent contractors. The

Court noted that Hancock's complaint sought to recover for injuries arising out of the doctor's negligent care, and not from the industrial accident. The Court held that under those facts the doctors were "third persons" and subject to tort liability. Clearly, *Hancock* does not involve the dual capacity doctrine, nor was that doctrine adopted therein. We decline the opportunity to adopt the dual capacity doctrine in Idaho at this time.

Finally, we hold that the district court erred in granting summary judgment in favor of United Steelworkers. As previously noted, that summary judgment was granted *sua sponte*, and without the opportunity for any argument to be heard thereon, and the district court at the time of its ruling did not have the benefit of the more recent *Rawson v. United Steelworkers*, 111 Idaho 630, 726 P.2d 742 (1986). We reverse and remand to the district court for its consideration of that issue alone. No costs allowed.

DONALDSON, BISTLINE and HUNTLEY, JJ., and BENGTSON, J. Pro Tem., concur.