858 P.2d 782

**STATE of Idaho, DEPARTMENT OF FINANCE, Plaintiff–Respondent,**

v.

**Offshore Finance Limited, Ernst Nelo Tietjen and Merrill Goertzen, Defendants,**

and

**John B. TENNEY, Defendant–Appellant.**

No. 19645.

Court of Appeals of Idaho.

June 14, 1993.

Rehearing Denied Aug. 27, 1993.

Petition for Review Denied Sept. 24, 1993.

John B. Tenney, appellant pro se.

Larry J. EchoHawk, Atty. Gen., Mary E. Hughes, Deputy Atty. Gen., Boise, for respondent. Mary E. Hughes argued.

SILAK, Acting Judge.

John B. Tenney associated with a number of individuals and entities for the purpose of transacting business in the Global Stock Exchange (GSE). Tenney's association with Ernst Tietjen (Tietjen) in JTT Venture (JTT) ultimately resulted in a civil suit against him under the Idaho Securities Act (the Act), I.C. § 30–1401, *et seq.* During their association Tenney prepared documentary materials that Tietjen brought into Idaho for the purpose of soliciting investors in GSE. Testimony and documentary evidence presented at trial indicated that Tenney knew about Tietjen's activities in Idaho. The district court, acting as the trier of fact, found sufficient evidence to prove Tenney's liability under an aiding and abetting theory. Tenney timely filed an appeal challenging the judgment on three theories: (1) the court lacked jurisdiction over him as a citizen of Utah; (2) the court did not use the correct standard for fraud and aider-abettor liability; and (3) there was insufficient evidence to prove his liability for violations of the Act. For the reasons stated below we affirm the judgment.

## FACTS AND PROCEEDINGS

The real and fictitious individuals and entities involved in this case were woven into a web by events and circumstances that are too complex to unwind here, therefore we will discuss only those facts necessary for our decision. Tenney, an individual knowledgeable in securities transactions, became involved in the development of the GSE by acquiring options for the purchase of seats on the exchange. GSE was patterned, in part, after the New York Stock Exchange and was legitimately licensed to operate in the Republic of Panama.

Tenney began seeking investors to purchase interests in his optioned seats. In the early months of 1990 he became involved with Tietjen who claimed to be the United States representative of Offshore Finance Ltd., a company supposedly incorporated in Gibraltar. This relationship eventually grew into JTT, a joint venture/partnership, comprised of Tenney, Tietjen, and Lorne Jensen. The joint venture agreement was signed on May 11, 1990, for the purpose of participating in GSE. JTT, in July 1990, entered into a joint venture with T.R. Holdings S.A. for the purpose of attracting investors to GSE. During this time, an office with support staff was set up in Salt Lake City, Utah. This office was the center for business activities of JTT; the three partners and their staff produced documents which included offering materials intended to be used to raise investment capital for the venture.

Tietjen traveled the western United States, including Idaho, seeking investors. He used documents partially prepared by Tenney to sell interests in GSE and other investment schemes. On May 22, 1990, Tenney reported to Brian Caldwell, who would later become a principal in T.R. Holdings S.A., that Tietjen had "met with

religious groups with members in Idaho, Montana, and Canada" who had agreed to fund investments. Tenney had phone contact with Tietjen while he was in Idaho. The office staff at one time anxiously anticipated Tietjen's return from Idaho in the hope that he would return with enough investment money to meet the office payroll.

Tietjen made a trip to Boise on October 18, 1990, to meet with potential investors. The meeting was attended by an investigator from the Idaho Department of Finance. At the meeting Tietjen offered for sale unregistered securities and other investment opportunities relating to GSE as well as other entities. He promised a 7 to 1 return on investment within one year.

On November 22, 1990, the Department of Finance filed a verified civil complaint against Offshore Finance, Tietjen, and a number of other individuals and entities including Tenney. All others named in the original complaint except Tenney were either dismissed or a default judgment was entered against them. Tenney answered the complaint *pro se* and on June 20, 1991, represented by counsel, moved for summary judgment with accompanying affidavits. The motion was denied without findings and conclusions on August 12, 1991. A trial before the district court began on August 19, and on August 29, the court issued its findings of facts and conclusions of law. On October 4, 1991, judgment was entered against Tenney, enjoining him from certain activities in the securities business, awarding costs and attorney fees, and imposing a civil penalty which amounts were all to be determined at a later date. Tenney filed a timely appeal from the judgment. On December 11, 1991, the court awarded the Department costs and attorney fees and set a civil penalty of $5,000.

## ISSUES

Tenney raises the following issues on appeal:

1. Does Idaho have the right under its long-arm statute, I.C. § 5–514, to exercise both jurisdiction and venue over Tenney?

2. Was there sufficient evidence to show that Tenney was in a partnership, association, or agency relationship?

3. What standards must be used to demonstrate fraud under I.C. § 30–1403(3) and aider and abettor liability under I.C. § 30–1442(3) and was there sufficient evidence to establish Tenney's liability under the standards?

4. Was there error in the non-joinder of Global Stock Exchange and JTT Venture as defendants?

5. Whether Tenney was afforded due process.

Both Tenney and the Department request attorney fees on appeal.

## JURISDICTION

Tenney argues that he is not subject to personal jurisdiction in Idaho because the state "failed to produce any evidence that Tenney has any contacts, ties or relations" sufficient to subject him to Idaho's jurisdiction. Tenney recites a list of activities that he did not do in order to show that he should not be subject to personal jurisdiction. The Department argues that Tenney fails to cite any specific evidence in the record to substantiate his argument, but rather simply denies business or personal contact with Idaho. We agree. Tenney fails to attack the district court's findings that support jurisdiction.

■■■ For personal jurisdiction to be obtained, two conditions must be satisfied. First, a statutory basis must be established under I.C. § 5–514,[1] Idaho's long-arm stat-

---

1. I.C. § 5–514 reads in relevant part as follows:

 **5–514. Acts subjecting persons to jurisdiction of courts of state.—**
 Any person, firm, company, association or corporation, whether or not a citizen or resi-

 dent of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this

ute. "The exercise of personal jurisdiction by the courts of this state over those who do any of the acts enumerated in I.C. § 5–514 extends only 'as to any cause of action arising from the doing of any of said acts.'" *Houghland Farms, Inc. v. Johnson,* 119 Idaho 72, 75, 803 P.2d 978, 981 (1990). Second, constitutional requirements of the due process clause of the fourteenth amendment to the United States Constitution must be met. *Schneider v. Sverdsten Logging Co.,* 104 Idaho 210, 211, 657 P.2d 1078, 1079 (1983). The analysis to be applied under each standard was recently articulated by our Supreme Court in *Houghland,* above. Before we apply these standards we note that an appellate court will review the question of the existence of personal jurisdiction over a nonresident defendant as one of law which is reviewed freely. *Houghland,* 119 Idaho at 75, 803 P.2d at 981. In adopting I.C. § 5–514, the legislature intended to exercise all of the jurisdiction available to the state under the due process clause of the United States Constitution. The long-arm statute is to be liberally construed to provide a forum for Idaho residents. *Id.* (citation omitted).

Tenney argues that the state failed to establish personal jurisdiction under I.C. § 5–514. However, he does not support this argument except by claiming the lack of constitutionally required "minimum contacts." The state presents three arguments in support of personal jurisdiction under section 5–514: (1) Tenney personally transacted business for the purpose of realizing pecuniary benefit, (2) Tenney committed tortious acts within Idaho, and (3) Tenney was subject to jurisdiction because of acts committed by his agent.

█ The acts of Tietjen as an agent of JTT establish personal jurisdiction over Tenney. Generally, a joint venture is analogous to a partnership, and is often defined as an association of two or more persons carrying out a single business enterprise for the purpose of realizing a profit.

*Rhodes v. Sunshine Mining Co.,* 113 Idaho 162, 166, 742 P.2d 417, 421 (1987). "Where a joint venture exists, each of the parties is the agent of the others and each is likewise a principle [sic] of the others so that the act of one is the act of all." *Rhodes,* 113 Idaho at 167, 742 P.2d at 422 (citation omitted). Documentary evidence established that Tietjen, Tenney and Jensen were the principals in JTT, a joint venture. Testimony showed that Tietjen was in Boise trying to raise money for JTT. Tietjen's attempts to sell unregistered securities were the transactions that gave rise to this action. The money raised from Tietjen's sales trips was to be used to further the interests of JTT and its principals. The principals helped prepare offering materials for Tietjen and they were aware that Tietjen was traveling into Idaho to raise money for the enterprise. We hold that these activities by the principals as agents of each other, particularly Tietjen, were business transactions meant to further JTT's pecuniary interests, thereby establishing the statutory basis of personal jurisdiction over Tenney. Because any one of the bases the state asserts would independently support personal jurisdiction under the long-arm statute, we need not address the others. Therefore, we next turn to the constitutional standard.

█ *Houghland* followed *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) for its analysis of the constitutional due process test for the exercise of personal jurisdiction. The Supreme Court in *Burger King* reasoned that the minimum contacts required by *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), are met if the defendant purposefully directs his activities at residents of the forum state and the litigation arises out of or relates to those activities. *Houghland,* 119 Idaho at 76, 803 P.2d at 982 (citing *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182.)

state as to any cause of action arising from the doing of any of said acts:
(a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuni-

ary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation; . . . .

■ Once it has been determined that minimum contacts exist with the forum state, the second prong of the constitutional standard, whether the exercise of jurisdiction comports with fair play and substantial justice, must be met. *Burger King* stated that the minimum contacts must be evaluated in light of the following:

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.... On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King,* [471 U.S. at 477–478, 105 S.Ct.], at 2184–2185. (citations omitted).

The *Burger King* court also focused on "the foreseeability ... that the defendant's conduct and connection with the forum state are such that [the defendant] should reasonably anticipate being haled into court there." *Id.* at 474, 105 S.Ct. at 2183 (cited in *Houghland,* 119 Idaho at 80, 803 P.2d at 986).

■ The district court, in finding jurisdiction proper, held that Tenney had purposefully directed, participated in, and benefited from activities conducted in Idaho. Tenney's argument that the Department failed to produce any evidence to support the court's finding is misplaced. Again, as in our statutory analysis, the acts of attempting to sell unregistered securities in Idaho were the acts that gave rise to this action; therefore, those acts are the ones we must consider in determining jurisdiction. The record contains substantial evidence to support a finding of minimum contacts from purposefully directed activities intended to offer and sell unregistered securities in Idaho. Documentary evidence presented at trial included a letter written by Tenney indicating that a religious group's members in Idaho had agreed to fund one to three million dollars for the GSE, and other letters written by Tenney which were included in offering packages presented to Idaho residents. This evidence indicated that Tenney knew and participated in contacting Idaho residents. In addition, testimonial evidence indicated that Tenney helped prepare the offering materials in which his letters were included, and that he spoke to Tietjen by telephone while Tietjen was in Idaho attempting to sell securities using the offering materials. Further, testimony also indicated that Tenney was anticipating receiving money from the sales trips into Idaho. The nature and quality of these contacts support a finding that Tenney purposefully directed activities at Idaho residents such that he should have reasonably anticipated the possibility of being haled into court in Idaho.

■ We now turn to whether the exercise of jurisdiction is consistent with fair play. Tenney's only argument against jurisdiction based on the fair play element is that he could not "effectively defend himself in Idaho for business activities conducted in foreign countries," that it had been "very difficult for [him] to marshall witnesses or gather material from other countries." The Department argues that Tenney has not presented a compelling enough case to overcome the minimum contacts based on his purposefully directed activities. We agree. Tenney has not presented this Court with any argument that he actually had witnesses he was unable to present because of the forum's location nor did he claim that there was specific documentary evidence that he could not present. Also, Tenney failed to indicate to the district court or to this Court the substance of any possible testimony or documentary evidence. Therefore, we conclude that Tenney has failed to present a compelling argument that the notion of fair play has been violated and we hold that personal

jurisdiction was properly exercised by the district court.[2]

## PARTNERSHIP

 Tenney argues that there was not sufficient evidence to show that he was involved in a partnership, association, or agency relationship. We disagree. The Department presented as evidence a joint venture agreement signed by Tenney which created a partnership among Jensen, Tietjen, and Tenney known as JTT Venture. There was no evidence at trial disputing the existence of JTT as a partnership; therefore, we hold that there was sufficient evidence to show that Tenney was involved in a partnership with Jensen and Tietjen.

## FRAUD

 Tenney argues that the Department failed to prove fraud because there was no evidence to support the required element of reliance. The Department counters by arguing that in an enforcement action reliance is not required. Tenney relies on *Sharp v. Idaho Investment Corp.*, 95 Idaho 113, 121–23, 504 P.2d 386, 394–96 (1972) to establish the elements of fraud. While we agree that *Sharp* indicated the elements of common law fraud, which requires detrimental reliance, we have before us a statutory civil enforcement action. The Department correctly points out that I.C. § 30–1403 prohibits the use of misleading statements in connection with the offer of any security. In addition, federal caselaw interpreting the anti-fraud section of the Securities Exchange Act of 1934, which is similar to I.C. § 30–1403, does not require reliance in an enforcement action. *S.E.C. v. Blavin*, 760 F.2d 706, 711 (6th Cir.1985). We hold that detrimental reliance is not required when the Department is pursuing an enforcement action for the offer of securities under I.C. § 30–1403.[3]

## AIDER–ABETTOR LIABILITY

 Tenney argues that the Department did not make a specific allegation of acts that if proved would constitute aider-abettor liability. Additionally, he argues that there was no evidence to show he controlled other defendants, purposely did business in Idaho, or knew or gave permission for the material he prepared to be used in Idaho. While no Idaho cases have interpreted the aider-abettor section of the Act, I.C. § 30–1442(3), federal courts have articulated the following three elements for aider-abettor liability: (1) the existence of an independent primary wrong; (2) the actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong. *Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

Tenney challenges, as a separate issue, the existence of an independent wrong; however, we will address it as part of the aider-abettor issue along with his argument that the Department failed to prove by sufficient evidence that he had knowledge or substantially assisted in the wrong.

Tenney argues that the Department must link him to a specific security and that the evidence presented at trial supporting the fact that twelve different "securities" were offered was so broad that he could not adequately defend himself. This issue is raised for the first time on appeal. "It is well settled that 'issues not raised below and presented for the first time on appeal will not be considered or reviewed.'" *Freiberger v. American Triticale, Inc.*, 120 Idaho 239, 243, 815 P.2d 437, 441 (1991), *citing Sandpoint Convalescent v. Dept. of Health*, 114 Idaho 281, 756 P.2d 398 (1988); *Baldner v. Bennett's*, 103 Idaho 458, 649 P.2d 1214 (1982).

---

2. Although Tenney raised the issue of improper venue in this appeal, he presented no argument to this Court to sustain his claimed error. Without supporting legal argument, we uphold the district court's ruling that venue was proper.

3. Tenney requests this court to "re-examine" a portion of testimony that indicated Tietjen offered a 7:1 return on investment, to determine if it constituted fraud as outlined in *Sharp*. Because Tenney fails to present any argument as to why the court committed error regarding this part of the case, we decline to reach this issue.

■ Even though the issue of a primary wrong was not preserved, we must address the other elements as they are properly raised under a sufficiency of the evidence argument. After a complete review of the record we conclude that there is sufficient evidence in the record to support the district court's determination that Tenney had knowledge of the acts being carried out in Idaho and that his assistance in preparing the offering materials used in Idaho was substantial enough to warrant a finding of aider-abettor liability. The record indicates that Tenney knew that his letters concerning the GSE were included in the offering material, and he knew that Tietjen was dealing with residents of Idaho. In addition, Tenney assisted Tietjen by proofreading and editing Tietjen's written documents, and he physically prepared the offering materials that were the core of Tietjen's effort to sell interests in GSE in Idaho. Therefore, we hold that there was sufficient evidence to support a judgment that Tenney aided and abetted Tietjen in violating the Act.

## NON-JOINDER OF PARTY

Tenney argues that the Department should have joined the GSE and JTT as parties. No motion to join additional parties was made below. Therefore, as noted above, we will not address issues not properly preserved for appeal.

## DUE PROCESS

■ Tenney argues that his due process rights to a fair trial were violated because the district court was biased against him. To support his allegation of bias Tenney refers this Court to the district court's findings of fact and conclusions of law claiming the tone of the language used by the court shows bias. However, the gravamen of Tenney's argument is that the evidence at trial did not support the court's conclusions. In reviewing a constitutional claim of a due process violation by the district court we employ free review. *Cf. State v. Rusho*, 110 Idaho 556, 559, 716 P.2d 1328, 1331 (Ct.App.1986). Tenney is correct that due process requires that the evidence presented at trial must prove all of the elements of the case against him by a preponderance of the evidence. After a complete review of the record, we hold that there was sufficient evidence presented at trial to support every allegation necessary for a judgment to be entered against Tenney.

## ATTORNEY FEES

Both parties claim costs and attorney fees on appeal. We hold that costs and attorney fees should be awarded to the Department pursuant to I.C. § 30-1442(2)(c); I.A.R. 40 and 41.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court and award costs and attorney fees to the Department.

WALTERS, C.J., and SWANSTROM, J., concur.