**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 32625**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2007 Opinion No. 25** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: May 7, 2007** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| RUTH M. CHEENEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County.  Hon. Jeff M. Brudie, District Judge.

Order of restitution, affirmed in part, reversed in part, and remanded; judgment of restitution in favor of Wells Fargo Bank, vacated; judgment of restitution in favor of Stuart Allan and Associates, vacated.

Clark & Feeney, Lewiston, for appellant.  Charles M. Stroschein argued.

Hon. Lawrence G. Wasden, Attorney General; Daniel W. Bower, Deputy Attorney General, Boise, for respondent.  Daniel W. Bower argued.

_____

PERRY, Chief Judge

Ruth M. Cheeney appeals from the district court's order of restitution and judgments of restitution.  For the reasons set forth below, we vacate the judgments of restitution in favor of Wells Fargo Bank and Stuart Allan and Associates and remand for entry of an amended judgment of restitution payable to the direct victim of Cheeney's crime.

**I.**

**FACTS AND PROCEDURE**

As an employee at a doctor's office, Cheeney was responsible for billing and deposits, including deposits of checks received for the doctor's services, into his account at Wells Fargo Bank.  When making the deposits at Wells Fargo, Cheeney would apparently deposit all checks but one, instructing the teller that one check needed to be cashed for use at the doctor's office.  Cheeney would keep the cash.  In August 2003, the doctor terminated Cheeney's employment for allegedly procuring fraudulent prescriptions and for irregularities with office petty cash.  The

1

doctor soon thereafter discovered that substantial amounts of money were missing. Cheeney allegedly embezzled over $200,000 between January 2000 and August 2003.

Thereafter, Wells Fargo entered into a settlement agreement with the doctor, whereby the bank paid the doctor $157,500 for losses he incurred as a result of Cheeney's theft. Additionally, Safeco Insurance Company apparently paid the doctor $15,000 for his loss. Stuart Allan and Associates, a collection agency, began pursuing the $15,000 from Cheeney on behalf of the insurance company.

The state charged Cheeney with grand theft. I.C. §§ 18-2403(2)(b) and 18-2407(1)(b)(8). Cheeney pled guilty, and the state dismissed charges filed in a separate criminal case. The district court sentenced Cheeney to a unified term of seven years, with a minimum period of confinement of three years, and ordered restitution in the amount of $232,788.49. The district court subsequently suspended Cheeney's sentence and placed her on probation for seven years. Cheeney objected to the order of restitution. At a hearing on Cheeney's objection, Cheeney stipulated to $220,589.55 being the proper amount of restitution but argued that the bank and the collection agency were not entitled to restitution. The district court entered an order for restitution and separate judgments in favor of the doctor for $48,089.55, Wells Fargo Bank for $157,500, and Stuart Allan for $15,000. Cheeney appeals the order of restitution and the judgments in favor of Wells Fargo and Stuart Allan.

## II.

## ANALYSIS

Cheeney does not dispute that the doctor was authorized to receive restitution. Cheeney disputes the district court's ruling and the state's argument on appeal that the bank and the insurance company's collection agency were also authorized to receive restitution.

Orders for the payment of restitution to crime victims are governed by I.C. § 19-5304. *State v. Taie*, 138 Idaho 878, 879, 71 P.3d 477, 478 (Ct. App. 2003). The decision whether to require restitution is committed to the trial court's discretion. *Id.* It is generally recognized, however, that courts of criminal jurisdiction have no power or authority to direct reparations or restitution to a crime victim in the absence of a statutory provision to such effect. *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002). Therefore, the trial court's exercise of discretion in requiring restitution must be within the boundaries provided in Section 19-5304. To qualify for restitution, a claimant must be a "victim" as that term is used in the

2

statute. I.C. §§ 19-5304(1)(e), (2). Restitution may be ordered only for actual economic loss suffered by a victim. I.C. §§ 19-5304(1)(a), (2). Determination of the amount of economic loss shall be based upon the preponderance of evidence submitted to the court by the prosecutor, defendant, victim or presentence investigator. I.C. § 19-5304(6). Each party shall have the right to present such evidence as may be relevant to the issue of restitution, and the court may consider such hearsay as may be contained in the presentence report, victim impact statement, or otherwise provided to the court. *Id.* On appeal, the award will be upheld if it is supported by substantial evidence. *See Taie*, 138 Idaho at 879, 71 P.3d at 478; *State v. Hamilton*, 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct. App. 1997); *State v. Bybee*, 115 Idaho 541, 544, 768 P.2d 804, 807 (Ct. App. 1989).

The present case requires us to determine whether the bank and the insurance company's collection agency fall within the statutory definition of "victims" who are authorized to receive restitution. This Court addressed this issue in *State v. Gardiner*, 127 Idaho 156, 898 P.2d 615 (Ct. App. 1995) under a prior version of Section 19-5304, which did not include insurers within the definition of victims. We held that the district court could award the directly-injured victim the full amount of the economic loss even though an insurance company had already paid the directly-injured victim for the loss. *See Gardiner*, 127 Idaho at 167, 898 P.2d at 626. This Court reasoned that, pursuant to Section 19-5304(2), the existence of an insurance policy covering the victim's loss does not absolve a defendant of the obligation to pay restitution. The defendant was thus prevented from gaining a "windfall" just because the victim had the foresight to obtain insurance. The definition of victim in Section 19-5304(1)(e) was amended to include insurers and certain other persons and entities after the *Gardiner* decision.[1] *See* 1997 Idaho Sess. Laws, ch. 112 at 272. Section 19-5304(1)(e) now includes four categories of victims. *See* I.C. §§ 19-5304(1)(e)(i), (ii), (iii), and (iv). Pertinent to this appeal, Section 19-5304(1)(e)(iv) defines victim to include "a person or entity who suffers economic loss because such person or entity has made payments to or on behalf of a directly injured victim pursuant to a contract including, but not limited to, an insurance contract."

---

[1] Cheeney's reliance on *Gardiner* as authority establishing which persons or entities may be victims is therefore misplaced. This Court recognized the amendment to the definition of victim in a case not cited in Cheeney's opening brief. *See Taie*, 138 Idaho at 879 n.1, 71 P.3d at 478 n.1.

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction, it has the duty to ascertain the legislative intent and give effect to that intent. *Rhode*, 133 Idaho at 462, 988 P.2d at 688. To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is incumbent upon a court to give a statute an interpretation, which will not render it a nullity. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). Constructions of a statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004); *State v. Yager*, 139 Idaho 680, 690, 85 P.3d 656, 666 (2004).

Section 19-5304(1)(e)(iv) unambiguously includes in the definition of victim any person or entity who suffers economic loss because such person or entity has made payments to or on behalf of a directly-injured victim pursuant to a contract. A plain reading therefore includes third parties who incurred a loss pursuant to a contractual obligation to make payments to or on behalf of a directly-injured victim. Without such a contractual obligation, the third party is not a victim as defined in Section 19-5304(1)(e)(iv). Such third-party victims could include insurance companies or any other party that makes payments to or on behalf of the directly-injured victim pursuant to a contract. The determination of whether payments were made pursuant to a contract is a question of fact for the trial court. Each party has the right to present evidence on whether a person or entity qualifies as a victim, and the court may consider such hearsay as may be contained in the presentence report (PSI), victim impact statement, or otherwise provided to the court. *See* I.C. § 19-5304(6). On appeal, factual findings in ordering restitution will not be disturbed if supported by substantial evidence. *See Hamilton*, 129 Idaho at 943, 935 P.2d at 206; *Bybee*, 115 Idaho at 544, 768 P.2d at 807.

4

Nothing in Section 19-5304 requires that the directly-injured victim's award must be reduced by amounts paid to him or her by any third party who does not qualify as a victim under the statute. As it did at the time of the *Gardiner* decision, Section 19-5304(2) still provides that the existence of an insurance policy covering the victim's loss does not absolve a defendant of the obligation to pay restitution. We conclude that, in amending Section 19-5304, the legislature did not intend to supersede the portion of the *Gardiner* decision holding that the district court could award the directly-injured victim the full amount of the economic loss even though a third party had already paid the directly-injured victim for the loss. *See id.*, 127 Idaho at 167, 898 P.2d at 626. A defendant is therefore still prevented from gaining a windfall in the event that a victim had the foresight to obtain insurance or the diligence to pursue some other form of compensation for his or her loss.

This Court has relied on Section 19-5304(1)(e)(iv) to hold that insurance companies that paid benefits for damage inflicted by a defendant's criminal actions were victims entitled to recover their economic loss. *See Taie*, 138 Idaho at 879, 71 P.3d at 478. The defendant in *Taie* did not argue, however, that the state failed to prove the insurance companies were contractually obligated to make payments to the directly-injured victims. Rather, the defendant's argument was limited to challenges that the evidence did not support the amount of the restitution order and that the district court failed to adequately consider Taie's inability to actually pay the total award. Therefore, *Taie* did not address the sufficiency of the evidence presented by the state to establish that the insurance companies were victims who made their payments pursuant to contractual obligations.

In the present case, Cheeney argues that the state did not present sufficient evidence that Wells Fargo or Safeco were victims who made their payments to the doctor because of contractual obligations requiring them to do so. The district court found, in a written order on restitution, that the doctor carried a business insurance policy with Safeco and that the insurance company subsequently contracted with Stuart Allan to collect the $15,000 payment from Cheeney. If the district court's findings were supported by substantial evidence, Safeco could be a victim because the district court found that Safeco paid the doctor pursuant to a contract--an insurance policy. However, the district court did not find, and the state does not argue, that the collection agency paid the doctor $15,000. The district court could therefore order restitution to be paid directly to Stuart Allan only if Section 19-5304 authorizes payment of restitution to be

5

made to an agent of a person or entity that qualifies as a victim. We need not decide whether the district court may award restitution to Stuart Allan, as Safeco's agent, because the record before us does not contain substantial evidence of an insurance contract to qualify Safeco as a victim. The only evidence pertinent to Safeco is a collection letter to Cheeney from Stuart Allan for $15,000. The letter indicates that Safeco is Stuart Allan's client, but it makes no reference to an insurance policy or a payment from Safeco to the doctor.

Likewise, we need not determine whether the district court made a finding that Wells Fargo made its payment pursuant to a contract because the record before us does not support such a finding. The record includes a settlement agreement between Wells Fargo and the doctor, a letter from the bank's counsel regarding the settlement agreement, and a copy of a check for $157,500 from the bank to the doctor. These exhibits refer to an agreement to settle an account dispute, but the exhibits do not indicate that the dispute arose from a contract between the bank and the doctor. Based on the evidence before us, the dispute could have arisen, as Cheeney asserts it did, from an allegation that the bank acted negligently rather than from a contractual obligation the bank had to the doctor. We are therefore not persuaded by the state's argument that evidence of the settlement agreement qualifies as evidence that the $157,500 payment was made pursuant to a contract.

The state argues that it provided Cheeney with a three-inch-thick stack of documents regarding restitution, which included information establishing that the payments made by Wells Fargo and Safeco were made pursuant to contracts with the doctor. The state does not show, however, that this three-inch-thick stack of documents was ever presented to the district court and it is not included in the record before us. The district court therefore could not rely upon it. The state also cites several pages from the PSI. None of the portions of the PSI cited by the state refer to Safeco or Stuart Allan. The PSI indicates that Cheeney embezzled the money at the bank, but it does not indicate that the bank paid the doctor pursuant to a contract.

The transcript from the restitution hearing indicates that the state did not present any testimony or evidence during the hearing. At the hearing, however, the doctor and the prosecutor represented that the doctor had an insurance policy with Safeco.

THE COURT:      Safeco Insurance was evidently the insurance provider for
                [the doctor], some kind of business operation policy.
[DOCTOR]:       That's correct, Your Honor.
[PROSECUTOR]:   Yes, Your Honor.

6

[DEFENSE COUNSEL]: Judge, I'm going to object to people in the gallery making comments to the court.

THE COURT: That's fine. . . .

The doctor was not under oath when he responded to the district court. Pursuant to Section 19-5304(6), the court may consider such hearsay as may be contained in the PSI, victim impact statement, or otherwise provided to the court. Section 19-5304(6) therefore sets a lower standard than the rules of evidence that would apply to a criminal trial. If the doctor had indicated that he had an insurance policy with Safeco while testifying under oath at the restitution hearing or in his victim impact statement in the PSI, the district court could have relied upon his statement as evidence. However, the doctor's unsolicited comment while he was not under oath and the prosecutor's unsupported representations cannot be relied upon as evidence of the existence of a contract, even under the low evidentiary standard established in Section 19-5304(6).

In sum, the record is devoid of any evidence, hearsay or otherwise, that Wells Fargo and Safeco made payments pursuant to contractual obligations to the doctor. Section 19-5304(1)(e)(iv) requires evidence of a contractual obligation before the district court may enter an order of restitution and judgment for a third-party victim that incurred a loss by making payments to a directly-injured victim. Courts of criminal jurisdiction have no power to direct restitution to a crime victim in the absence of a statutory provision authorizing such restitution. *See Richmond*, 137 Idaho at 37, 43 P.3d at 796. We are therefore constrained to hold that the district court erred when it ordered restitution to be paid directly to Wells Fargo and Safeco's collection agency, Stuart Allan.

Cheeney, however, does not gain a windfall due to the doctor's foresight and diligence in securing substantial compensation for his loss. Cheeney stipulated that the proper amount of restitution was $220,589.55. As noted above, nothing in Section 19-5304 limits the directly-injured victim's award by amounts paid to him or her by any other third party who does not qualify as a victim under the statute. Indeed, in *Gardiner*, this Court held that the district court could award the directly-injured victim the full amount of the economic loss even though an insurance company had already paid the directly-injured victim for the loss. *See Gardiner*, 127 Idaho at 167, 898 P.2d at 626. That holding in *Gardiner* was not superseded by the statutory amendment redefining the term "victim." In the absence of evidence that payments by Wells Fargo and Safeco were made pursuant to contractual obligations, the statute authorizes the

7

district court to order Cheeney to pay the doctor restitution for the entire amount of the economic loss that Cheeney stipulated to have caused, $220,589.55.[2]

## III.

## CONCLUSION

We hold that the district court erred by ordering Cheeney to pay restitution directly to Wells Fargo and Stuart Allan when the state failed to present substantial evidence that those parties incurred an economic loss pursuant to contracts with the doctor. We therefore reverse the district court's order to the extent that it awarded restitution to the bank and collection agency and vacate the judgments of restitution for the bank and the collection agency. The district court was authorized, however, to order Cheeney to pay restitution in favor of the doctor for the entire amount of the economic loss to which Cheeney stipulated, $220,589.55. We therefore affirm the district court's order to the extent that it awarded restitution to the doctor in the amount of $48,089.55. On remand, however, the district court is instructed to enter an amended order of restitution and enter an additional judgment for $172,500 in favor of the doctor.

Judge LANSING and Judge Pro Tem WALTERS, **CONCUR.**

---

[2] It will be up to Wells Fargo and Safeco to work out with the doctor any reimbursement for the amounts they paid to the doctor. *See Gardiner*, 127 Idaho at 167, 898 P.2d at 626.