**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 34662**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 567 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: July 31, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| SHERMAN R. MAXWELL, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Charles W. Hosack; Hon. James Michaud; Hon. Benjamin R. Simpson, District Judges.

Judgment of conviction for grand theft and damaging a motor number, and order of restitution, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Erik R. Lehtinen, Chief, Appellate Unit, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

LANSING, Judge

Sherman R. Maxwell appeals from his conviction of grand theft and two crimes relating to damaging a motorcycle's motor number. He asserts that the State's evidence was insufficient, that the district court erroneously permitted the State to amend the indictment, and that the district court erred in its award of restitution. We affirm.

**I.**

**BACKGROUND**

Early in 2004, Sherman Maxwell and James and Diana Witherspoon ("James" and "Diana" individually) decided to pool their resources to repair and sell used cars with the goal of

1

earning a profit.[1]  It appears the basic agreement was that the Witherspoons would provide money to purchase damaged cars at auction and Maxwell would perform the repairs.  In March 2004, Maxwell and the Witherspoons also agreed to build and sell a custom motorcycle "from the ground up."

The Witherspoons agreed to contribute various parts, including the motor, for the construction of the motorcycle.  Maxwell agreed to contribute several other parts, including the frame, and to assemble the motorcycle.  At trial, an employee from the Department of Motor Vehicles (DMV) testified that the DMV uses the number listed on a motorcycle's frame to determine the motorcycle's vehicle identification number (VIN) both when initially assigning a VIN to a newly constructed motorcycle and when subsequently matching a vehicle to the title.  On April 30, the Witherspoons submitted an application to transfer the title to the motorcycle from Maxwell's name into their own.[2]  At trial, the Witherspoons asserted that the title they obtained was for the motorcycle Maxwell had assembled using the parts that they and Maxwell had contributed.  The Witherspoons also testified that Maxwell delivered the motorcycle to them in early May, but that they returned it to him shortly thereafter to make adjustments and to install an additional part.  Maxwell denied delivering the motorcycle to the Witherspoons and asserted that the Witherspoons stole the title to an unrelated motorcycle and forged his signature, thinking that they had obtained title to the motorcycle Maxwell was building.

By July, the business relationship had soured and Maxwell refused to deliver the motorcycle to the Witherspoons.  The Witherspoons sought police assistance to recover the motorcycle.  The police declined the Witherspoons' request, however, in part because Maxwell claimed to possess a mechanic's lien.  The Witherspoons were unable to locate or recover the motorcycle after Maxwell was subsequently evicted from the shop where he had been storing the motorcycle and parts.

---

[1]     The agreement between Maxwell and the Witherspoons may have been arranged, at least in part, through the Witherspoons' business, Small Block Enterprises, Inc., and Maxwell's business or business name, Vonzipper's Custom Cycles.  For purposes of this opinion, we will not differentiate between the individuals and their business entities or business names.

[2]     It appears that Maxwell had previously obtained title to the frame, which the Witherspoons assert was used to build the motorcycle, or to another motorcycle previously built upon the same frame.

In August 2004, Maxwell sold a motorcycle to Phil Neff.[3] When Neff attempted to have the motorcycle titled and registered, it was discovered that the motor number had been obliterated. Thus, the DMV refused to issue title. Neff attempted to return the motorcycle to Maxwell and obtain a refund, but Maxwell refused.

Maxwell was eventually charged with grand theft for withholding or disposing of the motorcycle titled in the Witherspoons' name, with defacing or obliterating the VIN or motor number of a vehicle, and with selling a vehicle with an obliterated or defaced VIN or motor number. After a jury trial, Maxwell was convicted on all counts and ordered to pay restitution. Maxwell appeals.

## II.

## ANALYSIS

Maxwell raises three issues on appeal. He asserts that the evidence was insufficient to sustain his conviction for grand theft, that the district court erred by allowing the State to amend charges alleging that Maxwell defaced or obliterated a motor number or VIN and sold a vehicle with a defaced or obliterated motor number or VIN, and that the district court erred in determining the amount of restitution owed. We address each issue in turn.

### A. Sufficiency of the Evidence of Grand Theft

Maxwell asserts that there was insufficient evidence that the Witherspoons owned the motorcycle that he refused to deliver to them, and thus, that the State failed to prove theft beyond a reasonable doubt. Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). The evidence will be

---

[3]     A significant portion of the trial was spent on discussions of whether the motorcycle sold to Neff was the same motorcycle Maxwell built for the Witherspoons or whether it included any of the same components. Our decision is unaffected by this dispute.

considered in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

In order to prove grand theft, the State was required to prove that the Witherspoons owned the motorcycle. "A person steals property and commits theft when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an *owner* thereof." I.C. § 18-2403(1) (emphasis added). For purposes of determining another person's ownership as an element of theft, an "owner" is "any person who has a right to possession thereof superior to that of the taker, obtainer or withholder." I.C. § 18-2402(6). Thus, in this case, the State had the burden of proving that the Witherspoons' possessory rights to the motorcycle were superior to Maxwell's. Maxwell asserts that the State failed to do so because the evidence at trial did not demonstrate that Maxwell sold the motorcycle to the Witherspoons. Instead, Maxwell asserts that the evidence demonstrated that he and the Witherspoons entered into a partnership or joint venture to build and sell the motorcycle and that, under this business relationship, both parties held equal possessory rights to the motorcycle. Thus, Maxwell asserts that he cannot be guilty of theft.

We begin by addressing Maxwell's argument that "there is no competent evidence to suggest that Mr. Maxwell ever sold the motorcycle to the Witherspoons." The flaws in this argument are twofold. First, Maxwell grossly misrepresents the evidence presented at trial by stating that *no* competent evidence of a sale exists. We note that Maxwell asks us to disregard Diana's testimony that Maxwell sold the motorcycle to the Witherspoons because she did not have any first-hand knowledge of the actual agreement that was reached between Maxwell and James.[4] Even doing so, a review of the record reveals at least *some* competent evidence suggesting that Maxwell sold the motorcycle to the Witherspoons, including the following.

---

[4] Maxwell has not challenged the admission of Diana's testimony on appeal. Furthermore, even if he had, we have previously explained that consideration of improperly admitted evidence is permissible when considering the sufficiency of evidence. *See State v. Moore*, 148 Idaho 887, 894, 231 P.3d 532, 539 (Ct. App. 2010). We do not consider Diana's testimony here merely because it is not necessary to do so. However, if we were to consider all of Diana's testimony, we could find additional evidence of a sale including Diana's testimony that the Witherspoons made a $5,000 payment for the motorcycle. We acknowledge that Diana's testimony on this point was inconsistent, but under our standard of review we must review the evidence in the light most favorable to the prosecution.

James Witherspoon testified that he and Maxwell agreed to transfer title of the motorcycle from Maxwell to the Witherspoons, that he and Maxwell filled out a bill of sale together, that both he and Maxwell signed Maxwell's certificate of title ("Maxwell's title") to the motorcycle, and that James took the bill of sale and Maxwell's title to the DMV and effectuated a transfer of title.[5] A copy of Maxwell's title was admitted into evidence. The "Assignment of Title" section on the certificate lists James and Diana as "Purchasers," displays the signature of James Witherspoon in the buyer's field and a signature purported to be Maxwell's in the seller's field, and lists a purchase price of $7,000 and a sale date of April 30, 2004. Relying upon *State v. Bennett*, 150 Idaho 278, 246 P.3d 387 (2010), Maxwell asserts that title to the motorcycle is not determinative of ownership. While we agree that there are situations where the title holder and the "owner" of the property may be different, we do not agree with the implication that the title is irrelevant to a determination of ownership. "Idaho law presumes that the holder of title to property is the legal owner of that property." *Hettinga v. Sybrandy*, 126 Idaho 467, 469, 886 P.2d 772, 774 (1994); *accord Russ Ballard & Family Achievement Inst. v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 579, 548 P.2d 72, 79 (1976). Thus, evidence that Maxwell voluntarily transferred title to the Witherspoons weighs in favor of a finding that the motorcycle was the Witherspoons' property, even under the theories of partnership law that Maxwell asserts on appeal. *See* I.C. § 53-3-204(d) ("Property acquired in the name of one (1) or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes.").

Additionally, Diana testified that she heard Maxwell offer to sell the motorcycle to the Witherspoons for $15,000. Both James and Diana testified that Maxwell delivered possession of the motorcycle to the Witherspoons in May 2004 after it was completed or nearly completed, and that they returned it shortly thereafter for adjustments and installation of an additional part. Finally, the jury was presented with a letter from James to Maxwell dated July 3, 2004, stating, in part, "we would also like to pick up the 2003 Renegade motorcycle *that we purchased* and you

---

[5]     Several witnesses testified that the Witherspoons obtained title to the motorcycle. It is unclear why the State did not introduce the new title into evidence.

have failed to deliver." (Emphasis added.) Maxwell's argument that there is *no* evidence of a sale completely ignores this evidence.

Second, Maxwell appears to assume that a simple sale involving a simultaneous exchange of money and property is the only method by which ownership of the motorcycle could have been transferred to the Witherspoons. Although there was evidence presented at trial that the Witherspoons purchased the motorcycle, it does not appear that the transfer was a simple exchange of $7,000 for the motorcycle, as the bill of sale and title would suggest. James testified that even after the Witherspoons obtained both title and possession of the motorcycle, they were still under an obligation--presumably pursuant to the original agreement--to pay Maxwell a portion of the proceeds upon the sale (or resale) of the motorcycle. He also testified that the $7,000 listed on the bill of sale and certificate of title was an "arbitrary amount" he and Maxwell came up with, suggesting it was something other than a simple purchase price. However, whatever the financial arrangements were to compensate Maxwell for the transfer of the motorcycle to the Witherspoons, there was substantial and competent evidence that the Witherspoons held exclusive possessory rights to the motorcycle when they obtained both title and possession of the motorcycle in May 2004.[6] *See Bennett*, 150 Idaho at 279-80, 246 P.3d at 388-89.

Maxwell next asks this Court to reconsider the ownership of the motorcycle as a matter of law, again citing to the *Bennett* decision. The facts of *Bennett* can be summarized as follows: a seller delivered a trailer to a buyer but retained the title, the buyer took the trailer without making all the payments, and the buyer was charged and convicted of grand theft. *Id.* The Idaho Supreme Court vacated the conviction because "a seller of goods who has delivered the goods to the buyer, but has not yet been paid in full and does not have a security interest, is not an owner of the goods for the purposes of I.C. § 18-2403(1)." *Bennett*, 150 Idaho at 278, 246 P.3d at 387. In reaching this conclusion, the Court examined the parties' relative possessory rights under

---

[6] Whether Maxwell held any other rights, and whether Maxwell has a claim against the Witherspoons for nonpayment of the $7,000, is beyond the scope of this opinion. James appeared to indicate that even after the motorcycle's title was reassigned, he was still obligated to pay Maxwell half of the proceeds upon the sale of the motorcycle pursuant to the terms of their original agreement. However, neither party appears to assert that an entitlement to proceeds from the sale of an asset based on contract equates to ownership of the asset.

Article 2 of the Uniform Commercial Code and concluded that because the seller parted with possession of the trailer, the seller's retention of the title did not create an enforceable security interest that would have given the seller superior possessory rights upon the buyer's default. *Id.* at 280, 246 P.3d at 389.

Maxwell asserts that just as the Supreme Court examined the Uniform Commercial Code to determine ownership of the trailer in *Bennett*, this Court must examine partnership and joint venture law to determine the ownership of the motorcycle. However, we are not able to conduct the type of review that Maxwell requests. In *Bennett*, the Court vacated the buyer's conviction for grand theft because it was able to determine on uncontroverted evidence that the seller was not the owner, as a matter of law. Thus, the Court was able to conclude that the buyer could not have stolen the trailer from the seller.

The circumstance here is very different because Maxwell's argument raises factual issues that were not addressed below. Maxwell's arguments on appeal are premised on the assumption that he and the Witherspoons entered into a partnership or a joint venture. Maxwell's theory of equal ownership may be a plausible interpretation of the facts that has at least some support in the law. *See Rhodes v. Sunshine Min. Co.*, 113 Idaho 162, 166, 742 P.2d 417, 421 (1987) ("It is immaterial in whose name the property is acquired in a joint venture, as one holding title is a trustee for those who are so engaged in the joint enterprise." (quoting *Stearns v. Williams*, 72 Idaho 276, 284-5, 240 P.2d 833, 838-9 (1952))). *See also* I.C. § 53-3-204 cmt. 3 ("Ultimately, it is the intention of the partners that controls whether property belongs to the partnership or to one or more of the partners in their individual capacities, at least as among the partners themselves."). However, whether a partnership or joint venture exists is an issue for a trier of fact. *See Montgomery v. Montgomery*, 147 Idaho 1, 7, 205 P.3d 650, 656 (2009); *Rhodes*, 113 Idaho at 166, 742 P.2d at 421. *Accord C.I.R. v. Tower*, 327 U.S. 280, 286-87 (1946). Maxwell presented virtually no argument on these issues at trial, did not request any instructions to guide the jury in making a determination of ownership based on a partnership or joint venture theory, and has not asserted a claim of instructional error. Thus, in order to conclude that Maxwell had equal possessory rights to the motorcycle under theories of a partnership or joint venture, we would first have to decide a factual issue raised for the first time on appeal. We do not have the authority to do so. *State v. Gittins*, 129 Idaho 54, 56-57, 921 P.2d 754, 756-57 (Ct. App. 1996) ("It is the sole province and function of the jury to determine or decide disputed claims and

7

questions of fact arising in the case before it."). Because these issues were not explored below, we are not able to address them on appeal. *See, e.g*, *State v. Perry*, 150 Idaho 209, 225, 245 P.3d 961, 977 (2010) (holding ordinarily, "an issue raised for the first time on appeal will not be considered."). In contrast to the issue presented in *Bennett*, the issue here is not one that can be decided as a matter of law. By raising partnership and joint-venture theories on appeal, Maxwell's arguments go far beyond the scope of a challenge to the sufficiency of the evidence to support the jury's verdict on the issues presented to the jury.

In sum, we conclude that the State presented substantial and competent evidence to prove that the Witherspoons had exclusive possessory rights to the motorcycle in May 2004. In light of this evidence, we will not second-guess the jury by attempting to make our own factual findings on appeal under alternate theories. Because there is substantial and competent evidence that the Witherspoons were owners of the motorcycle, we affirm Maxwell's conviction for grand theft.[7]

## B.    Amended Indictment

Maxwell challenges the district court's decision to permit the State to amend the indictment. He asserts that the amended indictment alleged different offenses from those alleged in the original indictment, in violation of Idaho Criminal Rule 7(e) and the due process guarantee of the Fourteenth Amendment to the United States Constitution. Count two of the original indictment alleged that Maxwell defaced, destroyed, or obliterated "a motor vehicle identification number on a 2003 Renegade custom motorcycle" in violation of Idaho Code § 49-1418(3). The original count three alleged that Maxwell disposed of, sold, or offered for sale "a 2003 Renegade custom motorcycle from which the vehicle identification number" had been defaced, destroyed, or obliterated in violation of Idaho Code § 49-1418(4). Over Maxwell's objections, the court permitted the State to amend count two by replacing the words "a motor vehicle identification number" with the words "a motor number, manufacturer's number, or parts number, on a motor or engine" and to amend count three by replacing the words "the vehicle identification number" with the words "the motor or engine number."

---

[7]    As was true in *Bennett*, it appears that this case might more appropriately have been resolved as a civil matter. *See Bennett*, 150 Idaho at 281, 246 P.3d at 390 (Jones, J., specially concurring) ("As the opinion demonstrates, this is a case that should have been resolved in the civil arena, rather than in a criminal prosecution."). Nevertheless, as Maxwell has not demonstrated error in his conviction for grand theft, we affirm.

8

An indictment may be amended, without a return to the grand jury, at any time before the prosecution rests so long as the amendment does not charge the defendant with an "additional or different offense" or prejudice the defendant's substantial rights. I.C.R. 7(e); *State v. Severson*, 147 Idaho 694, 709, 215 P.3d 414, 429 (2009). The trial court's decision to allow or disallow an amendment will be reviewed for an abuse of discretion. *Severson*, 147 Idaho at 709, 215 P.3d at 429.

Maxwell asserts that the amended indictment charged him with different offenses because the allegations of damage to the motor number in each count were different than the allegations of damage to a vehicle identification number in the original counts. However, the amended indictment continued to charge Maxwell with violations of the same criminal statutes charged in the original indictment. Section 49-1418(3) provides, "Any person who shall deface, alter, remove, cover, destroy or obliterate *the motor number*, manufacturer's number, *or identification number* of any vehicle, vessel, equipment or parts thereof . . . is guilty of a felony." (Emphasis added.) Similarly, Section 49-1418(4) provides, "Any person who knowingly disposes of, sells or offers for sale any vehicle, engine or parts removed from a vehicle, vessel, equipment or parts thereof . . . from which the manufacturer's number, *motor number* [*or*] *identification number* . . . has been defaced, altered, removed, covered, destroyed or obliterated is guilty of a felony." (Emphasis added.)

We have previously held that a statutory provision that lists multiple means or circumstances by which a crime may be accomplished generally does not create separate offenses for amendment purposes. *See State v. Palmer*, 138 Idaho 931, 937, 71 P.3d 1078, 1084 (Ct. App. 2003) (holding an amended information "increasing the amount of methamphetamine from 28 grams to 400 grams . . . did not charge a greater or different offense than the offense charged in the first amended information but merely increased Palmer's potential mandatory minimum sentence"); *State v. Seiber*, 117 Idaho 637, 639, 791 P.2d 18, 20 (Ct. App. 1989) (holding that theft as defined by Idaho Code § 18-2403(1) and theft by obtaining control over stolen property as defined by Idaho Code § 18-2403(4) "are simply alternate 'circumstances' under which the crime of theft may be charged," and thus, for purposes of amendment under Rule 7(e), are not different offenses); *State v. Cheney*, 116 Idaho 917, 918-19, 782 P.2d 40, 41-42 (Ct. App. 1989) (holding the language in Idaho Code § 18-8004 prohibiting intoxicated persons from driving *or* being in actual physical control of a vehicle does not create separate

9

offenses for purposes of amendment of a complaint); *State v. Banks*, 113 Idaho 54, 56-57, 740 P.2d 1039, 1041-42 (Ct. App. 1987) (holding that the subsections of Idaho Code § 18-6101, each of which constitutes a different circumstance under which the crime of rape is accomplished, do not constitute separate offenses for purposes of an amendment pursuant to I.C.R. 7(e)). *C.f. State v. LaMere*, 103 Idaho 839, 842 n.4, 655 P.2d 46, 49 n.4 (1982) (holding subsections of Idaho Code § 18-6101 do not constitute different offenses); *State v. Ferreira*, 133 Idaho 474, 482, 988 P.2d 700, 708 (Ct. App. 1999) (holding Idaho Code § 18-8004 sets forth one crime with two alternative methods of proof: "under the influence" *or* alcohol concentration level of 0.08 or more); *State v. Gossett*, 119 Idaho 581, 583, 808 P.2d 1326, 1328 (Ct. App. 1991) (holding "'threats of immediate and great bodily harm' [and] 'force' [are] two distinct and alternative theories provided by statute to establish lack of consent" in prosecution for rape under Idaho Code § 18-6101). Regardless of whether the indictments alleged that the motor number or the vehicle identification number was damaged in some manner, the alleged act of damaging the number was criminalized by Section 49-1418(3), and the alleged act of selling a motorcycle with a damaged number was criminalized by Section 49-1418(4). Violations of these same statutory provisions were charged in counts two and three of both the original and amended indictments. Thus, the amended indictment did not charge Maxwell with different offenses.

Maxwell argues that "the acts themselves define the crime charged, not the designation of the offense of the statute cited." For this proposition, he relies on *State v. O'Neill*, 118 Idaho 244, 249, 796 P.2d 121, 126 (1990); *State v. McKeehan*, 91 Idaho 808, 818, 430 P.2d 886, 896 (1967); and *State v. Mickey*, 27 Idaho 626, 631, 150 P. 39, 40 (1915), in which the Idaho Supreme Court stated that "the facts alleged rather than the designation of the offense, control." An identical issue was recently addressed in *Severson*, 147 Idaho at 701, 707, 215 P.3d at 421, 427. There, the defendant was indicted on one count of first degree murder. The original indictment alleged that Severson killed his wife by overdosing her with sleeping pills, but was later amended to allege murder by suffocation. *Id.* On appeal, Severson argued that the amendment was improper because the grand jury considered whether he murdered his wife by suffocation but declined to indict him on that basis. *Id.* at 707-708, 215 P.3d at 427-28. The Idaho Supreme Court affirmed Severson's conviction, holding:

> [A]n amendment that merely alleges additional means by which the defendant may have committed the crime is permissible if it does not prejudice the defendant. . . .

10

The amendment to the indictment in this case was permissible under standards of due process and Rule 7(e). First, the amendment did not charge Severson with a new offense. Both indictments charged Severson with the first-degree murder of his wife. The amendment merely alleged an alternative way Severson might have committed the crime.

*Id.* at 709, 215 P.3d at 429 (footnote omitted). The court elaborated, as follows:

Severson argues that under *O'Neill* an amendment is only permissible if the acts comprising the crime in the amended indictment are the same as those in the original indictment. He relies on statements in *O'Neill* that "the facts alleged rather than the designation of the offense, control" and that the defendant was not "charged with a totally different crime, nor any acts different than those originally alleged." *O'Neill*, 118 Idaho at 249-50, 796 P.2d at 126-27. However, Severson's characterization of *O'Neill* is misleading because that case dealt with an amendment that alleged a violation of a different statutory provision.

*Id.* at 709-10 n.17, 215 P.3d at 429-30 n.17.[8] The *Severson* decision is controlling here. An amendment that merely alleges additional means by which the defendant may have committed the crime does not charge the defendant with an "additional or different offense." *Id. See also State v. Major*, 111 Idaho 410, 414-15, 725 P.2d 115, 119-20 (1986) (holding amendment of information adding additional allegation of possession of stolen property under different circumstances was not additional offense under Rule 7(e)). Thus the amendment did not charge Maxwell with different or additional offenses, even though it alleged that he committed slightly different acts when those acts constituted violations of the same statutory provisions.

The amendment would nevertheless be impermissible if it prejudiced any of Maxwell's substantial rights. Due process requires that an indictment be specific enough to ensure that the defendant has a meaningful opportunity to prepare his defense and to protect the defendant from a subsequent prosecution for the same act. *Severson*, 147 Idaho at 709, 215 P.3d at 429; *State v. Gumm*, 99 Idaho 549, 551, 585 P.2d 959, 961 (1978). Maxwell has not presented any facts or argument to support a conclusion that the amendment resulted in any prejudice. We note that the amended indictment was filed on March 24, 2006, more than one year before Maxwell's trial.

---

[8]     Maxwell's reliance on *O'Neill*, *McKeehan*, and *Mickey* is similarly misplaced. In *McKeehan*, the Court upheld a decision to permit amendment from aggravated assault to aggravated battery when the acts alleged in the amended charging document were the same, and in *Mickey*, the Court upheld a conviction of involuntary manslaughter when the defendant was charged with manslaughter. As discussed above, the amended indictment charged Maxwell with violations of the same statutory provisions charged in the original indictment.

Therefore, Maxwell had more than adequate time to prepare a defense to the amended charges. Because the amended indictment did not charge Maxwell with an additional or different offense and did not result in prejudice, the amendment was permissible under principles of due process and Rule 7(e).

## C.      Restitution

Finally, Maxwell asserts that the district court erred in determining the amount of restitution owed. The Witherspoons apparently obtained insurance on the motorcycle through National Indemnity Company (hereinafter "National"), and prior to trial, National paid a claim for the loss of the motorcycle in the amount of $15,044.11. The district court entered an order of restitution that included an award in that amount to National. Maxwell asserts that the Witherspoons' claim of a loss in the amount of $15,044.11 overstated their economic loss by $5,000, and accordingly, that the award of restitution to National should be reduced by $5,000.

Awards of restitution to crime victims are governed by Idaho Code § 19-5304. Restitution may be ordered only for actual economic loss suffered by a victim, which may include an insurer that compensated the direct victim for the loss. I.C. §§ 19-5304(1)(a), (2); Idaho Code § 19-5304(1)(e)(iv); *State v. Cheeney*, 144 Idaho 294, 296-97, 160 P.3d 451, 453-54 (Ct. App. 2007); *State v. Taie*, 138 Idaho 878, 879-80, 71 P.3d 477, 478-79 (Ct. App. 2003). "Economic loss" includes, but is not limited to the value of property taken or harmed. Idaho Code § 19-5304(1)(a). The decision whether to order restitution and in what amount is within the discretion of a district court, guided by consideration of the factors set forth in Idaho Code § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Lombard*, 149 Idaho 819, 822, 242 P.3d 189, 192 (Ct. App. 2010); *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002); *State v. Russell*, 126 Idaho 38, 39, 878 P.2d 212, 213 (Ct. App. 1994). The amount of economic loss to be awarded must be based upon the preponderance of evidence submitted to the court by the prosecutor, defendant, victim, or presentence investigator. I.C. § 19-5304(6). The determination of the amount of restitution is a question of fact for the district court whose findings will not be disturbed if supported by substantial evidence. *Lombard*, 149 Idaho at 822, 242 P.3d at 192; *In re Doe*, 146 Idaho 277, 284, 192 P.3d 1101, 1108 (Ct. App. 2008); *Taie*, 138 Idaho at 879, 71 P.3d at 478. Proof of an amount paid by an insurance company on a claim may be sufficient to establish an amount of restitution, but only if that amount is not rebutted by "countervailing evidence

12

[showing] that the insurance payments were inflated or unreasonable." *Taie*, 138 Idaho at 880, 71 P.3d at 479.

It is undisputed that National paid $15,044.11 to the Witherspoons in satisfaction of the Witherspoons' claim on the stolen motorcycle. The State initially presented a copy of the check from National to the Witherspoons as the only support for an award of restitution to National. However, defense counsel asserted that National had "overpaid the claim" and objected to the use of the check to establish the amount of restitution, prompting the district court to continue the hearing to allow the State to present additional evidence. At the subsequent hearing, the State presented testimony from the insurance adjuster who had reviewed the Witherspoons' claims. The adjuster testified that he based the amount paid on his review of the documents submitted by the Witherspoons, including a copy of a $5,000 check from the Witherspoons to Maxwell and additional receipts totaling approximately $10,500 for parts, taxes, and fees relating to construction of the motorcycle and transfer of title.[9] At the hearing, the prosecutor also questioned Diana as follows:

> Q. And did you file a claim around October of 2004 regarding that motorcycle?
> A. Yes, we did.
> Q. Did you submit documents--
> A. We did.
> Q. --to the insurance company?
> A. Yes.
> Q. And of those documents that you submitted were the bulk of them for payments that you had--receipts for payments that you had provided to Mr. Maxwell for parts of this motorcycle that he was to build?
> A. Yes.
> Q. And he ultimately built that motorcycle?
> A. He did.
> Q. *And you also gave him exactly $5,000 towards his labor*?
> A. *Correct.*

(Emphasis added.) Thus, the evidence presented to the district court during the restitution hearing was that the Witherspoons had paid Maxwell $5,000 for his labor, and had paid more than $10,000 for parts, taxes, and fees. When viewed in isolation, this evidence was substantial and competent, and thus, sufficient to support an award of $15,044.11.

---

[9]    The Witherspoons had a deductible of $500, accounting for the difference between the amounts submitted to the adjuster and the amount paid by the insurer.

It should be noted that, when viewed in light of the other evidence presented at trial, Diana's testimony that the $5,000 check was for a payment for Maxwell's labor appears neither sufficient nor reliable. Diana Witherspoon's restitution testimony was directly inconsistent with the evidence presented at trial, including some of her own testimony. At trial, James consistently stated that the $5,000 payment was made as a loan to Maxwell to cover his expenses pending the eventual sale of the motorcycle. Accordingly, James testified that Maxwell owed him $5,000 "no matter what." A promissory note signed by Maxwell and James documenting the $5,000 loan was entered into evidence, and its authenticity was not disputed by the Witherspoons. Additionally, a demand letter dated July 13, 2004, signed by Diana and admitted at trial stated:

> Per the terms of the enclosed personal note for $5000.00, which you executed on May 17, 2004, [we are] now demanding payment in full of said note.
> Please remit payment in certified funds within 15 days of today's date. . . .
> *Having made the loan* to you in good faith, we are certain that you shall repay it in a like manner to avoid collection action commencing after the 15 day grace period.

(Emphasis added.) At trial, Diana inconsistently referred to the $5,000 given to Maxwell as a loan, as purchase money for the motorcycle, and as payment for labor.[10] Although Diana occasionally referred to the money as purchase money or payment for labor at trial, the other evidence, including her own demand letter, shows that the $5,000 payment was treated by the Witherspoons as a loan. The wild inconsistencies in Diana's testimony and conduct are troublesome. In light of the compelling evidence introduced at trial, including Diana's demand letter demanding repayment of the $5,000 as a loan, her contradictory testimony at the restitution hearing that the $5,000 given to Maxwell was a payment for labor ordinarily would not be sufficient to uphold an award of restitution based on that figure. Unfortunately, none of this contradictory evidence was brought to the attention of the district court at the restitution hearing. The judge who presided over the restitution hearing was not the same judge that presided at Maxwell's trial, and thus would not have had any independent knowledge that the evidence already in the record refuted Diana's testimony. The court repeatedly reminded the parties that it

---

[10] Furthermore, Diana testified that she was not present when James made the "loan" to Maxwell, and that she was "on the outside" of the dealings between James and Maxwell. Thus, she did not demonstrate that she had any first-hand knowledge that would allow her to competently characterize the nature of the $5,000 payment. *See* I.R.E. 701.

14

would rely on them to direct the court's attention to the information necessary to make an informed decision. Nevertheless, defense counsel did not cross-examine Diana regarding the purpose of the $5,000 payment, did not call James Witherspoon to rebut Diana's characterization of the payment, did not question Maxwell regarding the purpose of the payment, and did not direct the court's attention to the promissory note that clearly indicates that the $5,000 payment was a loan.

Because none of this information was presented to the district court, the district court could not rely on it. *See Cheeney*, 144 Idaho at 298, 160 P.3d at 455 (holding that while the State may have provided the defendant with a stack of documents regarding restitution, the stack was not presented to the district court and "[t]he district court therefore could not rely upon it"). In other words, although Maxwell objected to the restitution award to National on the basis that the claim was overpaid, he did not impeach or object to the specific evidence upon which the claim was calculated. Idaho's appellate courts ordinarily will not consider error not preserved for appeal through an objection at trial, *Perry*, 150 Idaho at 224, 245 P.3d at 976; and the fundamental error doctrine may not be invoked to raise a restitution issue for the first time on appeal because restitution proceedings are civil in nature. *State v. Herrera*, 152 Idaho 24, 266 P.3d 499, 510 (Ct. App. 2011).

In sum, we must either uphold the award of restitution based on evidence presented at the restitution hearing, even though that evidence is clearly contradicted by substantial evidence presented at trial, including contradictory testimony from the same victim who testified at the restitution hearing; or we must reverse the district court's award of restitution based on evidence that was not presented for the court's consideration at the restitution hearing. In this circumstance, we are constrained to uphold the award of restitution as Maxwell has not demonstrated that the district court's decision is unsupported by substantial and competent evidence. The district court made a reasonable decision based on the evidence and argument presented at the restitution hearing. Viewing only the evidence that was presented to the district court for a determination of an award of restitution to National, we conclude that that evidence was substantial and competent. Thus, we must affirm the award of restitution.

15

### III.

### CONCLUSION

The jury's verdict finding Maxwell guilty of grand theft was supported by substantial and competent evidence. Maxwell has not demonstrated that the Witherspoons did not have superior possessory rights, and thus we will not disturb the jury's findings. The amended indictment did not charge Maxwell with additional offenses, and Maxwell has not demonstrated that he was prejudiced by the amendment. Accordingly, we affirm all of Maxwell's convictions. We also affirm the award of restitution as it was supported by substantial and competent evidence.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**

16