**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40172**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 677 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 23, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TYLER KELLY VANSLYKE, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Molly J. Huskey, District Judge.

Order of restitution, affirmed.

Sara B. Thomas, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Tyler Kelly Vanslyke appeals from an award of restitution resulting from his conviction for burglary. He challenges portions of the order that awarded restitution to an insurance company to compensate for benefits it paid to the owners of property that was stolen by Vanslyke. Vanslyke asserts that there was no evidence that the amount reflects the fair market value of the goods that were stolen and that therefore the district court abused its discretion in ordering him to pay restitution in that amount.

**I.**

**BACKGROUND**

Vanslyke, acting with an accomplice, stole a large amount of sporting equipment, including two boats, goose decoys, a motor, ammunition, and various tools that belonged to three different owners. Law enforcement received information that Vanslyke was one of the people

1

responsible for the theft. Vanslyke eventually admitted that he participated in the theft, and told detectives where the stolen items could be found.

Vanslyke was charged with a single count of grand theft, Idaho Code §§ 18-2403(1), 18-2407(1)(b). A plea agreement was reached in which Vanslyke agreed to plead guilty to an amended charge of one count of burglary, I.C. § 18-1401. Following entry of the plea, the district court withheld judgment and placed Vanslyke on three years of probation. At that time, the district court entered the first in a series of restitution orders.

Meanwhile, before the equipment was recovered, State Farm Insurance Company had paid two of the owners, Mr. Lantz and Mr. Galloway, insurance benefits for the stolen hunting equipment.[1] Later, when the equipment was recovered, State Farm gave Lantz and Galloway the opportunity to reclaim their property and to return the insurance proceeds. The two declined, and State Farm therefore sold the property at a public auction. At the auction, the items recovered by police sold for substantially less than the amount that State Farm had paid to Galloway and Lantz. Although State Farm had paid Lantz $5,145.66 and Galloway $2,052.79 in insurance benefits, the company recouped only $921.60 from the auction of the recovered hunting equipment.

Following the auction, the district court conducted a restitution hearing, which included testimony from Lantz, Galloway, Vanslyke, and a State Farm claims representative. The State Farm representative testified that under its policies the insurance company would initially pay to its insured the "actual cash value" of stolen items and thereafter, when the insured had replaced the item, would reimburse the insured for the difference between the previously paid "actual cash value" and the replacement cost. Although the representative testified that the "actual cash value is the used price, the garage sale price," he later acknowledged that in this case there was little or no depreciation taken off the new retail cost of some of the items. Thus, it appears in this case that the actual cash value used by State Farm was near or at the replacement cost of some of the items.

Lantz testified that the decoys were worth more than the amount for which they sold at auction, but less than a new decoy. He acknowledged that new decoys would cost more than what someone would pay for the stolen, used decoys. In his words, "If you went down to

---

[1] The third person who owned some of the stolen property did not make a restitution claim.

2

Cabela's to get one this afternoon, you'd pay more for it." However, Lantz gave no estimate of the stolen decoys' value.

Through an affidavit and testimony at the hearing, Galloway gave his opinion as to the cost of replacing some of his property that was stolen. Although Galloway testified that the decoys were between one and four years old, he too failed to testify about the value of the used decoys.

Vanslyke also testified to the value of used decoys. He testified that the actual cash value used by State Farm was unrealistic because used decoys typically only sell for fifty to sixty percent of the retail price. He testified that depreciation of the decoys by State Farm--a mere five percent for some and no depreciation for others--did not reflect the actual value of the stolen decoys. Vanslyke was the only person who testified to the value of the decoys that were stolen in this case.

After the hearing, the district court entered its final restitution order directing Vanslyke to pay a total of $7,276.85, including $4,224.06 to reimburse State Farm for its payment to Lantz, and $2,052.79 to reimburse State Farm for its payment on Galloway's claim. The balance of the ordered restitution was to reimburse Lantz and Galloway for losses that were not covered by the insurance. Vanslyke appeals, contending that the amount of ordered restitution for State Farm is erroneous because it was not proved to be the market value of the items that Vanslyke stole.

## II.

## ANALYSIS

Whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002); *State v. Russell*, 126 Idaho 38, 39, 878 P.2d 212, 213 (Ct. App. 1994). The trial court is directed by statute to base the amount of economic loss to be awarded upon the preponderance of evidence submitted by the prosecutor, defendant, victim, or presentence investigator. I.C. § 19-5304(6). The determination of the amount of restitution is a question of fact for the trial court, whose findings will not be disturbed if supported by substantial evidence. *State v. Hamilton*, 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct. App. 1997). We will not overturn an order of restitution unless an abuse of discretion is shown. *Richmond*, 137 Idaho at 37, 43 P.3d at 796. When a trial court's discretionary decision is reviewed on

3

appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In determining the amount of restitution, the trial court "shall consider the amount of economic loss sustained by the victim as a result of the offense, the financial resources, needs and earning ability of the defendant, and such other factors as the court deems appropriate." I.C. § 19-5304(7). Restitution may only be awarded for actual economic loss suffered by the victim. I.C. § 19-5304(1)(a), (2). Economic loss is defined by statute as including, but not being limited to, "the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses." I.C. § 19-5304(1)(a). For the purposes of determining restitution, the value of property is defined as "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime." I.C. § 18-2402(11)(a). *See also* I.C. § 19-5304(1)(c). Generally, the "market value" of consumer goods is the reasonable price at which the owner would hold those goods out for sale to the general public, as opposed to the "cost of replacement" which would be the cost for the owner to reacquire the same goods. *State v. Smith*, 144 Idaho 687, 692, 169 P.3d 275, 280 (Ct. App. 2007).

Section 19-5304(1)(e)(iv) defines "victim" to include not only the direct victims of a crime but also "[a] person or entity who suffers economic loss because such person or entity has made payments to or on behalf of a directly injured victim pursuant to a contract including, but not limited to, an insurance contract." Included within the purview of this definition are insurance companies and others that have a contractual obligation to compensate the direct victim for property loss or damage occasioned by a crime. *See State v. Cheeney*, 144 Idaho 294, 297, 160 P.3d 451, 454 (Ct. App 2007). Importantly, it is the entity's contractual obligation that brings an insurer within the statutory definition of a victim and generally delimits its economic loss for purposes of restitution. As we have noted in the past, "[w]ithout such a contractual obligation, the third party is not a victim as defined in Section 19-5304(1)(e)(iv)." *Id.* at 297, 160 P.3d at 454. The determination whether payments were made pursuant to a contract, and the amount of such payments, are both questions of fact for the trial court. *Id.* On appeal, factual

4

findings underlying an order of restitution will not be disturbed if they are supported by substantial evidence. *See Hamilton*, 129 Idaho at 943, 935 P.2d at 206; *State v. Bybee*, 115 Idaho 541, 544, 768 P.2d 804, 807 (Ct. App. 1989).

Vanslyke does not dispute that as part of its contractual obligations to Lantz and Galloway, it paid them $5,145.66 and $2,052.79, respectively. Instead, Vanslyke contends that under the restitution statute the amount of restitution he could be ordered to pay State Farm was limited to the market value of the goods.

Vanslyke's argument is incorrect. In *State v. Taie*, 138 Idaho 878, 71 P.3d 477 (Ct. App. 2003), this Court held that as a victim, an insurer was entitled to reimbursement for the amount of economic loss it suffered. An insurer's economic loss is typically the amount that it was obligated to pay to the property owner. *State v. Cottrell*, 152 Idaho 387, 398-99, 271 P.3d 1243, 1254-55 (Ct. App. 2012); *Taie*, 138 Idaho at 880, 71 P.3d at 479. In *Taie*, the insurance company had paid $4,902.74 to the property owner in compensation for a damaged motorcycle. The owner then used the money to perform the repairs on the motorcycle himself. Taie argued that without an accurate accounting of how the money was spent to actually repair the motorcycle, there was not substantial evidence that the amount of the insurance payment was the actual value of the economic harm resulting from his crime. Contrary to Taie's argument, however, we held that the sum paid by the insurer was the amount of economic harm the insurer suffered. We said that a restitution award to an insurance company for an insurance disbursement would not be reversed unless the defendant showed that the amount paid out was inflated or unreasonable in relation to the property damage caused by the defendant. In that case, we affirmed the restitution award because the defendant had made no such showing.

Similarly, in *Cottrell*, we said that the amount paid by an insurer to an insured for a loss caused by a criminal offense is presumed to be reasonable unless there is showing that it is inflated or unreasonable. "[W]here the defendant provide[s] no evidence showing the amount of benefits were inflated or unreasonable, the victim insurer [is] entitled to recover [this amount as] its loss." *Cottrell*, 152 Idaho at 398, 271 P.3d at 1254.

Here, Vanslyke urges us to limit restitution to the fair market value of the used property that was stolen. He argues that State Farm should not be able to receive restitution for more than the fair market value of the items because the fair market value was the economic harm that Lantz and Galloway suffered. However, this argument does not comport with our prior

interpretation of the statute nor recognize the distinction between insurance carriers and direct victims.

Idaho Code § 19-5304(2) mandates that a court "shall order" restitution to the insurance company for the economic loss *it* suffers, unless the court determines that an order would be inappropriate or undesirable. Moreover, the statute directs that economic loss includes not only the "value" of property, but also "direct out-of-pocket losses or expenses." I.C. § 19-5304(1)(a). The statute thus provides that a victim's economic loss is not limited to the value of damaged or stolen property. Although a court can consider the value of the property while determining whether a restitution order is inappropriate or undesirable, the statute does not limit restitution to value of the property damaged, destroyed, or taken where a victim's proven economic loss is a different amount.

In the current case, there was substantial evidence State Farm had suffered an economic loss in the amount of $6,276.85 ($4,224.06 for Lanz's insurance claim, and $2,052.79 for Galloway's insurance claim), regardless of the fair market value of Lantz's and Galloway's property, because State Farm was contractually obligated to reimburse the pair those amounts. A State Farm agent testified that it was the company's contractual obligation with Lantz and Galloway to pay the replacement value of the items in circumstances such as those presented here. There was evidence that the amount paid by State Farm reflects a replacement value of the items insured. As to some of the items, the replacement value was deemed to be the retail price of new items, with depreciation deducted based upon age and condition of the stolen items. As to other portions of the stolen property, the evidence showed that no depreciation was taken because the items were relatively new and hardly used. There has been no showing that the payment was inflated beyond the replacement value of the goods, or that the amount was patently unreasonable. Therefore, the district court's finding that State Farm suffered an economic loss of $6,276.85 is supported by substantial evidence.

The amended order of restitution is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**

6